Affirmed by published opinion. Judge TRAXLER wrote the majority opinion, in which Judge WIDENER joined. Judge GOODWIN wrote a dissenting opinion.
OPINION
TRAXLER, Circuit Judge.
We are asked to decide whether IIRI-RA’s[1] repeal of discretionary relief for aggravated felons who have been ordered to be deported can be applied to appellant Dean Chambers, who was convicted at trial of an aggravated felony prior to the enactment of IIRIRA. We hold that IIRI-RA’s repeal of discretionary relief may be applied to Chambers. Accordingly, we affirm the decision of the district court.
I.
Chambers, a native and citizen of Jamaica, entered and began residing in the United States in 1978, when he was two years *287 old. In 1994, at the age of 17, Chambers was convicted of robbery with a deadly weapon after a trial in the Circuit Court for Prince George’s County, Maryland. He received a prison sentence of four years, all but 18 months of which was suspended.
Under the Immigration and Nationality Act (INA), an “alien who is convicted of an aggravated felony at any time after admission is deportable.” 8 U.S.C. § 1227(a)(2)(A)(iii) (2000). At the time of Chambers’ conviction and sentencing, however, his crime did not qualify as an “aggravated felony” within the meaning of the INA and therefore did not render Chambers deportable. Under the pre-IIRIRA version of the INA in effect at the time of Chambers’ trial, a “crime of violence” such as robbery with a deadly weapon did not constitute an “aggravated felony” unless it resulted in a prison term of at least five years. 8 U.S.C. § 1101(a)(43)(F) (1994). IIRIRA amended the INA so that a “crime of violence” qualifies as an “aggravated felony” if “the term of imprisonment [is] at least one year.” 8 U.S.C. § 1101(a)(43)(F) (2000); see also INS v. St. Cyr, 533 U.S. 289, 295-96 n. 4, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (explaining that “aggravated felony” is a “term [that] includes any ‘crime of violence’ resulting in a prison sentence of at least one year (as opposed to five years pre-IIRIRA)”).
On April 22, 1997, after IIRIRA took effect, the INS began removal proceedings against Chambers on the grounds that his conviction qualified as an aggravated felony because it was a crime of violence under 8 U.S.C. § 1101(a)(43)(F) for which he had received a sentence of at least one year. Chambers contended that he was not deportable. The immigration judge, however, concluded that Chambers’ conviction constituted an aggravated felony and ordered him to be removed from the United States under INA § 237(a) (2) (A) (iii). See 8 U.S.C. § 1227(a)(2)(A)(iii). The immigration judge also determined that Chambers could not apply for a discretionary waiver of deportation under INA § 212(c), a form of relief that was repealed by IIRIRA § 304(b).[2] Under pre-IIRIRA law at the time of Chambers’ conviction, he would have been eligible to apply for a discretionary waiver of deportation by the Attorney General under former INA § 212(c) because he received a prison sentence of less than five years. See 8 U.S.C. § 1182(c) (1994). IIRIRA, however, repealed INA § 212(c). See IIRIRA § 304(b), 110 Stat. 3009-597.[3] Thus, discretionary relief under INA § 212(c) was available at the time of Chambers’ trial, conviction, and sentencing, but not at the time that his removal procedures began. The immigration judge applied the repeal of INA § 212(c) to Chambers’ case and concluded that his application for relief under that section was “pretermitted.” J.A. 22. The Board of Immigration Appeals affirmed the decision of the immigration judge that Chambers was removable and not eligible for any form of relief from removal.
Chambers then sought to challenge the Board’s ruling by filing an application for habeas relief under 28 U.S.C.A. § 2241 (West 1994). Chambers contended that *288 the BIA’s application of IIRIRA’s repeal of INA § 212(c) produced an impermissible retroactive effect. Thus, Chambers contended that he was still eligible for discretionary relief under the version of INA § 212(c) that was in effect at the time of his conviction. Quoting Tasios v. Reno, 204 F.3d 544, 552 (4th Cir.2000), the district court rejected Chambers’ argument and held that the application of the repeal of INA § 212(c) would not “upset ‘reasonable, settled expectations and change the legal effect of prior conduct.’ ” J.A. 48.
Chambers then brought this appeal, which we held in abeyance for the Supreme Court’s decision in St. Cyr. The Supreme Court has issued its decision in St. Cyr and provided guidance on the retroactive application of IIRIRA § 304(b). Having received supplemental briefs from the parties on the impact of St. Cyr on this appeal, we now address Chambers’ contention that IIRIRA § 304(b) cannot be applied in his case.[4] In St. Cyr, the Supreme Court held that discretionary relief under INA § 212(c) “remains available for aliens ... whose convictions were obtained through plea agreements and who ... would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.” 533 U.S. at 326, 121 S.Ct. 2271. We are presented with the very narrow question of whether the fact that Chambers was convicted at trial rather than by guilty plea pursuant to a plea agreement changes the result dictated by St. Cyr. We conclude that, in Chambers’ case, it does.
II.
In St. Cyr, the Supreme Court affirmed its two-part analytical process for considering potentially retroactive statutes. First, a court must decide “whether Congress has directed with the requisite clarity that the law be applied retrospectively.” Id. at 316, 121 S.Ct. 2271; see also Landgraf v. USI Film Prods., 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (“When a case implicates a federal statute enacted after the events in suit, the court’s first task is to determine whether Congress has expressly prescribed the statute’s proper reach.”). We may not apply a statute retroactively “absent a clear indication from Congress that it intended such a result.” St. Cyr, 533 U.S. at 316, 121 S.Ct. 2271. “Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits.” Landgraf, 511 U.S. at 272-73, 114 S.Ct. 1483. If Congress has expressly, commanded that the statute must, or must not, be applied retrospectively, “our inquiry is concluded.” Tasios, 204 F.3d at 548. However, when Congress has not spoken with the requisite clarity, the next step in the retroactivity analysis is to determine whether the application of the statute “produces an impermissible retroactive effect.” St. Cyr, 533 U.S. at 320, 121 S.Ct. 2271. “If so, then in keeping with our traditional presumption against retroactivity, we presume that the statute does not apply to [the conduct at issue].” Martin v. Hadix, 527 U.S. 343, 352, 119 S.Ct. 1998, *289 144 L.Ed.2d 347 (1999) (internal quotation marks omitted).
A.
St. Cyr established that Congress did not provide a sufficiently clear command with respect to the temporal reach of the repeal of INA § 212(c) by IIRIRA § 304(b). See St. Cyr, 533 U.S. at 320, 121 S.Ct. 2271 (rejecting “the conclusion that, in enacting § 304(b), Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits” (internal quotation marks omitted)). Lacking such express instructions from Congress, we move directly to the question of whether applying the repeal of INA § 212(c) to Chambers produces an impermissible retroactive effect.
B.
A new statute does not produce a retroactive effect “merely because it is applied in a case arising from conduct antedating the statute’s enactment.” Landgraf, 511 U.S. at 269, 114 S.Ct. 1483. The question instead is “whether the new provision attaches new legal consequences to events completed before its enactment.” Id. at 270, 114 S.Ct. 1483. A statute would attach new legal consequences to prior events if its application “would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.” Id. at 280, 114 S.Ct. 1483. The question of whether a new statute attaches new legal consequences to prior conduct “demands a commonsense, functional judgment” that “should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.” Martin, 527 U.S. at 357-58, 119 S.Ct. 1998 (internal quotation marks omitted).
In St. Cyr, the Court considered whether IIRIRA’s repeal of discretionary relief under INA § 212(c) would have a retroactive effect if applied to an alien who was “convicted pursuant to a plea agreement at a time when [his] plea would not have rendered [him] ineligible for § 212(c) relief.” St. Cyr, 533 U.S. at 320, 121 S.Ct. 2271. The Court concluded that applying the repeal to aliens “who entered into plea agreements with the expectation that they would be eligible for[§ 212(c)] relief’ would “attach[ ] new legal consequences to events completed before its enactment” and produce a retroactive effect. Id. at 321, 121 S.Ct. 2271 (emphasis added) (internal quotation marks omitted).
In reaching this conclusion, the Court focused on an alien’s reasonable reliance on the possibility of discretionary relief under INA § 212(c) as one of the most important factors prompting him to forego trial and enter a plea agreement. “Given the frequency with which § 212(c) relief was granted in the years leading up to ... IIRIRA,” the Court reasoned that “preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.” Id. at 323, 121 S.Ct. 2271. Indeed, “[t]here can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions.” Id. at 322, 121 S.Ct. 2271. The Court held that “[b]e-cause [St. Cyr], and other aliens like him, almost certainly relied upon [the] likelihood [of receiving discretionary relief] in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious *290 and severe retroactive effect.” Id. at 325, 121 S.Ct. 2271.
1.
Chambers suggests that under the reasoning of St. Cyr, he possesses similar reliance interests that would cause the application of IIRIRA § 304(b) in his ease to operate retroactively. An alien in Chambers’ position, however, does not have a reliance interest comparable to that which was at the heart of St. Cyr. The alien in St. Cyr made his decisions in the context of the quid pro quo relationship established by a plea agreement where, “[i]n exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources.” Id. at 322, 121 S.Ct. 2271 (internal quotation marks omitted). The “perceived benefit” of the plea agreement was the very real possibility of § 212(c) relief: “Relying upon settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose § 212(c) relief, a great number of defendants in ... St. Cyr’s position agreed to plead guilty.” Id. at 323, 121 S.Ct. 2271. The Court concluded that the application of IIRIRA § 304(b) to St. Cyr “would surely be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations” because the new statute would deprive St. Cyr of the benefit he sought in exchange for pleading guilty while the government still enjoyed “the benefit of the[] plea agreement[], [an] agreement! ] that [was] likely facilitated by the alien[’s] belief in [his] continued eligibility for § 212(c) relief.” Id. (internal quotation marks omitted).
Thus, in order to obtain the benefit of continued eligibility for relief under INA § 212(c), St. Cyr entered a guilty plea pursuant to the terms of a plea agreement-a decision that resulted in an immediate and detrimental change of position with respect to his immigration status. The key event in terms of St. Cyr’s analysis of whether the new statute would produce a retroactive effect was the alien’s decision to abandon his constitutional right to a trial and plead guilty to a deportable offense in reliance on prior law. See St. Cyr, 533 U.S. at 325, 121 S.Ct. 2271. In reliance on the continued availability of INA § 212(c), St. Cyr pled guilty-a decision that immediately changed his status from non-deportable to deportable. See Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 109 (4th Cir.2001) (“In contrast to the aliens in St. Cyr and Tasios, Velasquez Gabriel posits no way in which his marriage in “reliance” on preexisting law weakened his immigration status under the new law or hurt his chances of remaining in this country.”).
In light of our reading of St. Cyr, Chambers’ argument that an immigrant may go to trial in reliance on the availability of § 212(c) relief is flawed for at least two reasons. First, it is not likely that aliens who go to trial to challenge the underlying crime do so primarily because they hope to obtain discretionary relief. The reliance interest in pleading guilty arises because of the quid pro quo exchange that characterizes a plea agreement but not trial. St. Cyr recognized that the reason an alien would agree to plead guilty and thereby acquire “deportable” status is the expectation that, by conferring a benefit on the government, he would receive a benefit in return-a reduced sentence that would ensure continued eligibility for discretionary relief. See id. at 323-24, 121 S.Ct. 2271. By contrast, an alien who goes to trial does *291 not act to preserve eligibility under INA § 212(c). In fact, by rolling the dice and going to trial, Chambers actually ensured that his eligibility for discretionary relief would remain uncertain. Charged with an offense carrying a maximum prison sentence of 20 years, Chambers was offered a plea agreement whereby he would receive a sentence of four years,[5] which at the time would have kept him eligible for discretionary relief. See 8 U.S.C. § 1182(c) (1994). By going to trial, Chambers rejected the certainty of eligibility by risking a sentence of more than five years in the event he was unable to successfully defend against the underlying charge. The fact that Chambers ended up with a shorter prison term than that offered by the government — one that was safely below the five-year eligibility threshold for § 212(c) relief at the time of sentencing — does not change the fact that Chambers proceeded to trial fully aware of the risk that he would be convicted and sentenced to a prison term that would disqualify him under INA § 212(c).
Second, in contrast to aliens who plead guilty, Chambers made no decision that adversely impacted his immigration status. See Velasquez-Gabriel, 263 F.3d at 109. An alien cannot (and could not at the time of Chambers’ trial) be deported for an aggravated felony without first being convicted of a crime that qualifies as a deport-able offense. Thus, an alien who enters a guilty plea to a qualifying crime acquires “deportable alien” status, thereby weakening his immigration status and taking a substantial step towards actual deportation. The decision to go to trial, however, does not render an alien deportable or subject him to certain deportation. Really, the opposite is true — -aliens who go to trial act to preserve, not weaken, their immigration status by challenging the underlying crime.
We also reject Chambers’ suggestion that he detrimentally relied on prior law because his offense was not even deporta-ble at the time of his conviction and therefore he “wrongly believ[ed] there [was] no immigration benefit to negotiating to a plea.” Supp. Brief of Appellant at 6. IIRI-RA § 321(a)(3) expanded the definition of “aggravated felony” to include “crimes of violence” resulting in a prison term of at least one year. See 8 U.S.C. § 1101(a)(43)(F) (2000). At the time of Chambers’ trial, a “crime of violence” did not qualify as an “aggravated felony” — for which an alien could be deported — unless the resulting term of imprisonment was at least five years. Chambers contends the state of the law with respect to potential immigration consequences gave him no incentive to negotiate a plea agreement; hence, he unwittingly “focus[ed] on the criminal justice aspects of whether to go to trial or negotiate a plea.” Supp. Brief of Appellants at 7. Again, Chambers makes an argument that is misguided on at least two counts. First, Chambers’ decision not to plead guilty did have immigration implications even then. Although Chambers’ conviction did not render him deportable at the time of his sentencing, Chambers was, at the time he made the decision to go to trial, charged with a violent offense carrying a maximum sentence that far exceeded the five-year threshold necessary for an offense to qualify as an “aggravated felony.” That is, at the time of trial, Chambers was facing a charge that could potentially render him deportable. Chambers went to trial in the face of this risk, gambling that, if convicted, he would not receive such a high sentence that he would be rendered deportable. That Chambers ultimately received a sentence that did not *292 render him deportable at the time is inconsequential, as far as goes the calculus Chambers used in determining whether to risk trial or not. Accordingly, it is simply not true that Chambers had no immigration incentive to negotiate a plea on the underlying charge. Second, this argument is essentially an indirect attack upon the retroactive application of the new, more expansive definition of “aggravated felony” as amended by IIRIRA § 321(a)(3). Chambers, of course, does not directly contend that IIRIRA § 321 cannot be retroactively applied to him because Congress has unambiguously instructed that the amended definition of “aggravated felony” applies to qualifying convictions entered before, on or after IIRIRA’s enactment. See IIRI-RA § 321(b), 110 Stat. 3009 628; St. Cyr, 533 U.S. at 318-19, 121 S.Ct. 2271. In short, the fact that Chambers’ conviction was not a deportable offense at the time of his sentencing, but later became so after IIRIRA was enacted, does not cause IIRI-RA’s repeal of discretionary relief to operate retroactively with respect to Chambers.[6]
2.
Chambers contends that detrimental reliance is not a sine qua non for retroactive operation of a new statute. Despite the central role played by the element of reliance in St Cyr, Chambers urges us to apply an analytical formula that does not include reliance as a consideration. Specifically, Chambers relies on Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), as support for the proposition that he need not demonstrate reliance upon prior law for the new statute to operate retroactively.
As a general matter, we agree that the Supreme Court has not limited its examination of a statute’s retroactive effect to one single, rigid test. In recent years, the Court has reiterated its adherence to Justice Story’s “influential definition” of a retroactive statute as one “which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.” Landgraf, 511 U.S. at 268-69, 114 S.Ct. 1483 (internal quotation marks omitted); see St. Cyr, 533 U.S. at 321, 121 S.Ct. 2271; Hughes Aircraft, 520 U.S. at 947, 117 S.Ct. 1871. However, these decisions have also reminded us that Justice Story’s definition “ ‘does not purport to define the outer limit of impermissible retroactivity’ ” and merely “describes several ‘sufficient,’ as opposed to ‘necessary,’ conditions for finding retroactivity.” St. Cyr, 533 U.S. at 321 n. 46, 121 S.Ct. 2271 (quoting Hughes Aircraft, 520 U.S. at 947, 117 S.Ct. 1871). Rather, “the Court has used various formulations to describe the functional conception of legislative retroactivity.” Hughes Aircraft, 520 U.S. at 947, 117 S.Ct. 1871 (internal alteration and quotation marks omitted); see Landgraf, 511 U.S. at 269, 114 S.Ct. 1483. Of course, as the Supreme Court has “repeatedly counseled, the judgment whether a particular statute acts retroactively should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.” St. Cyr, 533 U.S. at 321, 121 S.Ct. 2271 (internal quotation marks omitted).
In view of these observations by the Court about retroactivity, we have ac *293 knowledged that an alien’s failure to demonstrate reliance on pre-IIRIRA law might not foreclose a claim that the post-IIRIRA version of the INA operates retroactively. See Velasquez-Gabriel, 263 F.3d at 109 (citing Hughes Aircraft for the proposition that the application of newly enacted INA § 241(a)(5) might operate retroactively even though the alien was unable to demonstrate any reliance upon the prior version of the INA). Even if that is so, Hughes Aircraft, upon which Chambers relies, does not aid him. In Hughes Aircraft, the Court applied Justice Story’s definition and, without discussing reliance, held that an amendment to the False Claims Act operated retroactively because it eliminated a defense to a qui tam action based on pre-amendment conduct. See 520 U.S. at 951-52, 117 S.Ct. 1871. IIRI-RA’s repeal of the discretionary relief provision, however, unlike the amendment at issue in Hughes Aircraft, does not “take[ ] away or impairf] vested rights acquired under existing laws, or createf] a new obligation, imposef] a new duty, or attach! ] a new disability,” id. at 947, 117 S.Ct. 1871 (internal quotation marks omitted), with respect to the relevant past conduct, i.e., Chambers’ decision to go to trial. Nor, as Chambers suggests, does the repeal “attachf] new legal consequences to events completed before [IIRIRA’s] enactment,” Martin, 527 U.S. at 357-58, 119 S.Ct. 1998 (internal quotation marks omitted), or give “a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed,” Union Pac. R.R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199, 34 S.Ct. 101, 58 L.Ed. 179 (1913), because IIRIRA did not change the impact of Chambers’ decision to go to trial on his immigration status. As we have already noted, Chambers’ decision to go to trial did not render him deportable or subject him to certain deportation, regardless of whether pre- or post-IIRIRA law is applied.
III.
The application of IIRIRA § 304(b), which repealed discretionary relief from deportation formerly available under INA § 212(e), is not impermissibly retroactive as to Chambers. Accordingly, we affirm the decision of the district court.

AFFIRMED.

. IIRIRA is the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009-546.

. The immigration judge also concluded that Chambers was not eligible for “cancellation of removal,” a new form of relief under ÍIRI-RA. 8 U.S.C. § 1229b(a) (2000). This particular form of relief is not an issue in this appeal.

. Under the current version of the INA, the Attorney General has the authority to cancel removal for certain inadmissible or deporta-ble aliens, but not for aliens "convicted of any aggravated felony.” 8 U.S.C. 1229b(a)(3); see also INS v. St. Cyr, 533 U.S. 289, 297, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

. St. Cyr also definitively answered (in the negative) the question of whether Congress repealed habeas jurisdiction under § 2241 in cases such as this one. See 533 U.S. at 314, 121 S.Ct. 2271. In view of that portion of the St. Cyr decision, the government abandoned its challenge to the district court's assumption of habeas jurisdiction under § 2241. We note, however, that the district court correctly rejected the government’s jurisdictional challenge based on contrary circuit precedent. See Tasios v. Reno, 204 F.3d 544, 547 (4th Cir.2000); Bowrin v. INS, 194 F.3d 483, 486-89 (4th Cir.1999) (per curiam).

. These facts are drawn from the representations of the parties at oral argument.

. We note that the result reached by our decision is in accord with that reached by other circuit courts of appeal considering virtually the same issue. See Armendariz-Montoya v. Sonchik, 291 F.3d 1116, 1121 (9th Cir.2002); Lara-Ruiz v. INS, 241 F.3d 934, 945 (7th Cir.2001).