PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALEXIS MBEA,

$\qquad$ *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

$\qquad$ *Respondent.*

No. 05-1204

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A91-203-997)

Argued: February 1, 2007

Decided: March 22, 2007

Before WILKINSON, WILLIAMS, and MICHAEL, Circuit Judges.

___

Petition for review denied by published opinion. Judge Wilkinson
wrote the opinion, in which Judge Williams and Judge Michael
joined.

___

**COUNSEL**

**ARGUED:** Emmanuel Damascus Akpan, Silver Spring, Maryland,
for Petitioner. John Darren Williams, UNITED STATES DEPART-
MENT OF JUSTICE, Office of Immigration Litigation, Washington,
D.C., for Respondent. **ON BRIEF:** Peter D. Keisler, Assistant Attor-
ney General, Civil Division, Christopher C. Fuller, Senior Litigation
Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Office
of Immigration Litigation, Washington, D.C., for Respondent.

**OPINION**

WILKINSON, Circuit Judge:

This case arises out of the removal proceeding of Alexis Mbea, a citizen of Cameroon and permanent resident of the United States. The Board of Immigration Appeals found Mbea subject to removal under Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA") because Mbea had twice been convicted of crimes involving moral turpitude: arson and destruction of property. *See* 8 U.S.C. § 1227(a)(2)(A)(i)(I) (2000).

Mbea contends that he is nonetheless eligible for various forms of removal relief including cancellation of removal under INA § 240(A)(a), a hardship waiver under INA § 212(h)(B), and a deportation waiver under INA § 212(c). We hold that, because the malicious burning of property in violation of D.C. Code § 22-401 (1994) is a crime of violence, Mbea's arson conviction is an aggravated felony which renders him statutorily ineligible for cancellation of removal under INA § 240(A)(a) and for a hardship waiver under INA § 212(h)(B). Likewise, because Congress repealed INA § 212(c) subsequent to Mbea's convictions, and because Mbea never acted in reliance upon that provision, Mbea is ineligible for § 212(c) relief. The petition for review is, therefore, denied.

I.

Alexis Mbea entered the United States in 1975 as a diplomatic officer of the Cameroon Embassy. He became a permanent resident in 1988. In 1994, however, Mbea was tried and convicted of arson and destruction of public property in violation of §§ 22-401 and 22-403 of the District of Columbia Code. *See* D.C. Code Ann. § 22-401 (1994) (current version at D.C. Code Ann. § 22-301 (2001)); D.C. Code Ann. § 22-403 (1994) (current version at D.C. Code Ann. § 22-303 (2001)). He was sentenced to not less than eighteen months and no more than five years' imprisonment for arson. For the destruction of property conviction, Mbea was sentenced to three to ten years' imprisonment. These sentences, set to run consecutively, were suspended upon Mbea's successful completion of five years' probation.

In the spring of 2002, Mbea visited Cameroon. Upon returning to the United States, he applied for admission as a returning resident. Because of Mbea's prior criminal convictions, however, the Immigration and Naturalization Service viewed him as an arriving alien and commenced removal proceedings. The INS alleged that Mbea was subject to removal under INA § 212(a)(2)(A)(i)(I) because of his convictions for arson and destruction of property. Mbea responded that arson and destruction of property were not crimes involving moral turpitude and also applied for removal relief pursuant to INA §§ 212(c), 212(h)(B), and 240(A)(a).

At the removal hearing, the immigration judge held that Mbea's convictions for arson and destruction of property were crimes involving moral turpitude, and, as a result, a basis for removal under § 212(a)(2)(A)(i)(I). The IJ then denied Mbea's petitions for removal relief and ordered him removed to Cameroon.

Mbea appealed to the Board of Immigration Appeals, which affirmed and adopted the IJ's decision. Mbea now appeals.[1]

## II.

Mbea concedes that he is deportable on the ground that arson is a crime involving moral turpitude, but nonetheless contends that he is entitled to removal relief under INA §§ 240(A)(a) and 212(h)(B). These provisions permit the Attorney General to cancel or waive removal in certain circumstances, but they are cabined by a number of requirements, most pertinently that aliens convicted of aggravated felonies are not eligible. More specifically, INA § 240(A)(a) allows the Attorney General to cancel removal for certain long-term permanent residents — but only if the alien "has not been convicted of any

---

[1] This court has jurisdiction to review Mbea's appeal pursuant to 8 U.S.C. § 1252(a)(2)(C) (2000). Although that section generally bars judicial review of final removal orders when those orders are entered on the ground that the alien committed an aggravated felony or a crime involving moral turpitude, it permits review where, as here, a petition for appeal raises "constitutional claims or questions of law." *Id.* § 1252(a)(2)(D) (Supp. V 2005).

aggravated felony." 8 U.S.C. § 1229b(a) (2000).[2] Section 212(h)(B) similarly authorizes the Attorney General to waive removal proceedings where "the alien's denial of admission would result in extreme hardship" to a family member who is either a United States citizen or a lawful permanent resident. 8 U.S.C. § 1182(h)(B) (2000).[3] But no such waiver may issue if, since the date of the alien's initial admission, "the alien has been convicted of an aggravated felony." *Id.* § 1182(h).

In sum, Mbea's eligibility for both cancellation of removal under § 240(A)(a), and a hardship waiver under § 212(h)(B), turns on whether arson as defined by D.C. Code § 22-401 is an "aggravated felony." This court reviews legal issues, including the question of whether arson is an "aggravated felony," de novo. *Blanco de Bel-bruno v. Ashcroft*, 362 F.3d 272, 278 (4th Cir. 2004).

A.

Section 101(a)(43)(F) of the INA defines "aggravated felony" as a "crime of violence" for which the term of imprisonment is at least one year. 8 U.S.C. § 1101(a)(43)(F) (2000). In turn, "crime of violence" is defined as (1) "any offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 16(a) (2000); or (2) "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," *id.* § 16(b).

---

[2] 8 U.S.C. § 1229b(a) provides that the Attorney General may cancel removal if an alien: "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony."

[3] 8 U.S.C. § 1182(h)(B) provides that the Attorney General may, in his discretion, waive removal "in the case of . . . an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien."

The question of whether a conviction falls within the ambit of 18 U.S.C. § 16 is a categorical one. *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004); *see also Taylor v. United States*, 495 U.S. 575, 600 (1990); *United States v. Pierce*, 278 F.3d 282, 286 (4th Cir. 2002). We must therefore consider the nature of the offense as defined by statute, not the conduct at issue in any particular case. *Leocal*, 543 U.S. at 7; *United States v. Galo*, 239 F.3d 572, 581-82 (3d Cir. 2001); *see also Taylor*, 495 U.S. at 600.

B.

There can be no doubt that arson, as defined by D.C. Code § 22-401, is a "crime of violence." The D.C. arson statute punishes with one to ten years' imprisonment those who:

> maliciously burn or attempt to burn any dwelling, or house, barn, or stable adjoining thereto, or any store, barn, or out-house, or any shop, office, stable, store, warehouse, or any other building, or any steamboat, vessel, canal boat, or other watercraft, or any railroad car, the property, in whole or in part, of another person, or any church, meetinghouse, schoolhouse, or any of the public buildings in the District, belonging to the United States or the District of Columbia.

D.C. Code Ann. § 22-401 (1994) (current version at D.C. Code Ann. § 22-301 (2000)).

Mbea argues that his conviction for the above D.C. Code offense is not an "aggravated felony" as that term is defined in 18 U.S.C. § 16(a). He contends that D.C. Code § 22-401 "does not include any element requiring the 'use of force,' nor is the (willful) 'use of force' particularly likely; and therefore any conviction under D.C. Code Section 22-401 cannot be considered an 'aggravated felony.'" Mbea claims in essence that because D.C. Code § 22-401 does not include the term "force" it cannot be a crime of violence under 18 U.S.C. § 16(a) or render Mbea ineligible for removal relief under INA §§ 240(A)(a) and 212(h)(B).

We disagree. Not every statute defining a violent criminal offense

uses the term "force" in so many words. The D.C. Code provision prohibiting first degree murder, for example, does not use the word "force" or "violence," but it is clear that the statute defines an "aggravated felony." *See* D.C. Code Ann. § 22-2101 (2001).[4] To adopt petitioner's view therefore would strip the congressional enactment of 18 U.S.C. § 16(a) of any substance or meaning.

It is plain that the malicious setting of fire to homes, public buildings, and churches "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *See* 18 U.S.C. § 16(a). Fire *is* itself a physical force. Indeed, the Oxford English Dictionary defines "physical force" as, inter alia, "an influence acting within the physical world, a force of nature." *See* Oxford English Dictionary (2003). Fire is nothing if not a "force of nature" that exerts an influence "within the physical world." For fire not only has the power to provide warmth and light, but also the power to destroy. When that destructive force is maliciously set in motion by human hand for the purpose of burning a home, church, meetinghouse, or other similar structure, a "physical force" is used "against the . . . property of another" as required by 18 U.S.C. § 16(a). *See, e.g.*, *Leocal*, 543 U.S. at 9 ("The critical aspect of § 16(a) is that a crime of violence is one involving the 'use . . . of physical force against the person or property of another.'") (quoting 18 U.S.C. § 16(a)).

While fire may, of course, pose a danger to people, that is not a necessary condition for the finding of an "aggravated felony" under the statute. Rather, 18 U.S.C. § 16(a) defines as a "crime of violence" the use of physical force against either persons or property.

We thus hold that the malicious burning of homes, dwellings, and other property proscribed by D.C. Code § 22-401 is a "crime of violence" as defined by 18 U.S.C. § 16(a). *See, e.g.*, *United States v. Mitchell*, 23 F.3d 1, 2 n.3 (1st Cir. 1994) (per curiam) (holding that federal arson as set forth in 18 U.S.C. § 844(i) is a "crime of violence"

---

[4]The D.C. first degree murder statute provides, in part, "Whoever . . . kills another purposely, either of deliberate and premeditated malice or by means of poison . . . is guilty of murder in the first degree." D.C. Code Ann. § 22-2101.

under 18 U.S.C. § 3156(a)(4)); *United States v. Marzullo*, 780 F. Supp. 658, 662 & n.7 (W.D. Mo. 1991) (same); *United States v. Shaker*, 665 F. Supp. 698, 702 n.4 (N.D. Ind. 1987) (same). As a result, Mbea's arson conviction is an "aggravated felony" under Section 101(a)(43)(F) of the INA. Because Congress has plainly provided that aliens convicted of aggravated felonies have no recourse under either INA § 240(A)(a) or INA § 212(h)(B), Mbea's applications for such relief fail.

### III.

Mbea next argues that — even if arson is a "crime of violence" and thus an "aggravated felony" — he is nevertheless eligible for INA § 212(c) relief. Mbea is correct that, at the time of his 1994 convictions, Section 212(c) permitted the Attorney General to grant a discretionary deportation waiver to lawful permanent residents of at least seven years. *See* 8 U.S.C. § 1182(c) (1994). The Attorney General's authority to waive removal was not barred by an aggravated felony conviction so long as the resident alien had not served a prison sentence of five or more years. *Id.* But Congress changed all of this when it passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996. Section 304(b) of that statute repealed INA § 212(c) in its entirety and replaced it with cancellation of removal under INA § 240(A).[5] *See* Pub. L. 104-208, Div. C, Title III, § 304(b), Sept. 30, 1996, 110 Stat. 3009-597. Mbea claims, however, that courts may not apply the IIRIRA's repeal of INA § 212(c) to his pre-IIRIRA conviction because such an application would be impermissibly retroactive.

### A.

In *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court addressed the retroactive application of IIRIRA § 304(b). The Court began by finding that Congress had not clearly indicated that the repeal of INA § 212(c) was to be retrospective. *St. Cyr*, 533 U.S. at 320. The Court thus considered whether application of IIRIRA

---

[5]As noted, *supra*, Mbea is not eligible for § 240(A)(a)'s cancellation of removal because that provision does not apply to deportable aliens "convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3).

§ 304(b) to St. Cyr, an alien who had "entered into plea agreements with the expectation that [he] would be eligible for [§ 212(c)] relief" would produce an impermissible retroactive effect. *Id.* at 321. The Court concluded that because St. Cyr and aliens like him had "almost certainly relied upon [the significant] likelihood [of receiving § 212(c) relief] in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect." *Id.* at 325. Thus, under the Supreme Court's decision in *St. Cyr*, INA § 212(c) relief "remains available for aliens . . . whose convictions were obtained through plea agreements and who . . . would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326.

B.

In this case, we consider whether applying the IIRIRA's repeal of INA § 212(c) to Mbea, an alien who claims to have gone *to trial* in reliance upon such relief, produces an impermissible retroactive effect. This is not a question of first impression. To the contrary, this court decided precisely this issue in *Chambers v. Reno*, 307 F.3d 284 (4th Cir. 2002). Like Mbea, the petitioner in *Chambers* never entered a guilty plea "*with the expectation* that [he] would be eligible for § 212(c) relief," instead choosing to go to trial. *See id.* at 289-91. Chambers nonetheless argued that, like the alien who pled guilty in *St. Cyr*, he too possessed "reliance interests that would cause the application of IIRIRA § 304(b) in his case to operate retroactively." *Id.* at 290.

This court disagreed. We held that IIRIRA's repeal of § 212(c) did not produce an impermissibly retroactive effect as applied to an alien convicted after trial. *Id.* at 293. The court explained that while an alien who pleads guilty does so "in the context of a quid pro quo relationship" in which he benefits from the guarantee of a reduced sentence — one "that would *ensure continued eligibility* for [§ 212(c)] discretionary relief" — an alien who goes to trial does not strike a quid-pro-quo bargain or receive any similar assurance. *Id.* at 290-91. To the contrary, an individual who goes to trial in a case where the allowable statutory penalty exceeds that permitted by § 212(c) "actually ensure[s] that his eligibility for discretionary relief w[ill] remain uncertain." *Id.* at 291.

Mbea's contention that the application of IIRIRA § 304(b) to his pre-IIRIRA convictions has an impermissibly retroactive effect fails under this Court's holding in *Chambers*. The cases are on all fours. Like Chambers, Mbea rolled the dice and went to trial in a case where the maximum penalty for the alleged offense exceeded that permitted by § 212(c). *See id.* Like Chambers, he did not "abandon his constitutional right to a trial and plead guilty to a deportable offense in reliance on prior law." *See id.* at 290. Like Chambers, he ensured by going to trial "that his eligibility for discretionary relief would remain uncertain." *See id.* at 291. And, like Chambers, Mbea's decision to go to trial did not have an immediate adverse impact on his immigration status. *See id.* Finally, it is of no moment that Mbea ended up with a prison sentence below the five-year eligibility threshold for § 212(c) relief. As this court stated in *Chambers*, that fact "does not change the fact that [Mbea] proceeded to trial fully aware of the risk that he would be convicted and sentenced to a prison term that would disqualify him under INA § 212(c)." *See id.* at 291.

## IV.

For the foregoing reasons, we deny Mbea's petition for review.

*PETITION FOR REVIEW DENIED*