UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-1548

PHILLIP L. COCHRAN,

Plaintiff - Appellant,

v.

ERIC H. HOLDER, JR., Attorney General in his official
capacity,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. James C. Cacheris, Senior
District Judge. (1:06-cv-01328-JCC-TRJ)

Argued: May 10, 2011                    Decided: June 21, 2011

Before GREGORY and DUNCAN, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Phoebe Leslie Deak, LAW OFFICE OF LESLIE DEAK,
Washington, D.C., for Appellant. Ian James Samuel, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.
**ON BRIEF:** Tony West, Assistant Attorney General, Marleigh D.
Dover, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.;
Neil H. MacBride, United States Attorney, Alexandria, Virginia,
for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises out of a federal employee's claim of disability discrimination filed pursuant to the Rehabilitation Act of 1973 (the "RA"), 29 U.S.C. § 791 et seq. Plaintiff-Appellant Phillip Cochran ("Cochran"), a former Deputy United States Marshal ("DUSM"), appeals the district court's grant of summary judgment to the United States Marshals Service ("USMS") on his claims that the USMS discriminated against him based on a hearing disability. For the following reasons, we affirm.

I.

As this is an appeal from a grant of summary judgment, we present the facts in the light most favorable to the appellant. Pueschel v. Peters, 577 F.3d 558, 563 (4th Cir. 2009).

A.

Cochran served as a DUSM from 1986 to 1993. DUSMs' primary mission is "to provide for the security" of judicial personnel. 28 U.S.C. §566(a). Their responsibilities generally include protecting witnesses, providing safe transportation and handling of prisoners, and apprehending fugitives. To help ensure the agents' safe and effective performance of these duties, the USMS imposes a demanding set of medical fitness requirements. Of particular relevance at the time of Cochran's retirement was the agency's hearing standard. DUSMs were required to "be able to

2

hear [a] whispered voice at 15 feet with each ear." J.A. 29. Significantly, DUSMs had to meet the minimum hearing requirement without the use of a hearing aid. This was due to the risk of hearing aids being "knocked out during a struggle, not being worn by the individuals when they should be," or not being "tuned or adjusted properly." J.A. 290-91.

In November 1992, following a required periodic medical examination at work, Cochran learned that he suffered from hearing loss which kept him from satisfying the USMS's hearing standards and thereby disqualified him from service. Audiologist Andrea McDowell specifically reported that Cochran's "test results revealed a moderate sloping to severe sensorineural hearing loss bilaterally." J.A. 310. For further testing, Cochran was referred to Dr. Mark Winter, an otolaryngologist, who reported to the USMS in February 1993 that Cochran suffered a more "severe level of hearing loss" in the high frequencies, although his "binaural hearing loss would be less than 10%" overall "due to the better hearing in the lower frequencies." J.A. 317. Cochran's high frequency hearing loss was "consistent with his history of noise exposure," and manifested itself in an inability to "hear an ambulance easily while driving to the scene of an investigation" and a difficulty hearing "people in background noise." J.A. 316.

3

When Cochran was later asked in a sworn deposition whether his "hearing trouble [was] giving [him] any problems on a day-to-day basis" as of his 1992 hearing examinations, he answered "[a]bsolutely not." J.A. 254. He testified that he had previously been fitted for hearing aids in 1989, but did not wear them. Cochran gave contradictory explanations for not wearing his hearing aids, saying at one point that it was because he "didn't need them" and "didn't have any problems doing [his] job," J.A. 98, but also saying that they were not "effective," J.A. 326.

On March 23, 1993, the USMS informed Cochran that his hearing loss "present[ed] a significant risk" to him and others in the work environment, and recommended he "contemplate voluntary disability retirement." J.A. 320. The Service explained that if Cochran chose not to retire, it was "prepared to propose [his] removal based on medical unfitness." Id. On April 5, 1993, Cochran advised the USMS that he had opted for voluntary disability retirement. In his application for disability retirement, Cochran stated that his hearing loss prevented him from performing his duties as a DUSM and that continued exposure to loud noise would put him at risk of losing "all of [his] hearing." J.A. 32. His disability retirement was granted and became effective June 1993.

4

In December 1994, more than a year after Cochran's disability retirement took effect, the USMS Director announced the agency's contemplation of a change to the hearing standards which would allow the use of hearing aids during DUSM medical testing. In light of this proposed change, Cochran contacted the USMS Director in a January 1995 letter requesting reinstatement. The USMS responded that the proposals to the medical standards were still under review but that it would consider Cochran's request once the medical standards were finalized.

Shortly thereafter, Cochran made an additional, verbal request for reinstatement on the ground that his hearing had recovered. Because the relevant regulations did not provide for immediate reinstatement once an employee had been away from his job for more than one year, the USMS construed this communication as a request to be placed on the Reemployment Priority List ("RPL") via the Department of Justice's Priority Placement and Referral System ("PPRS").[1] The agency responded to Cochran in a letter explaining that, in order to place him on the list, it needed "a written request," "an Office of Workers'

_____

[1] As of 1995, the relevant regulation provided that "A[n] . . . employee . . . separated because of a compensable injury or disability . . . who has fully recovered more than 1 year after compensation began is entitled to be placed on the RPL." 5 C.F.R. § 330.204(a) (1995).

Compensation Programs [OWCP] report or other evidence showing [Cochran was] recovered," and a completed "registration form for the PPRS." J.A. 374. The record "provides no indication that [Cochran] completed any of the paperwork necessary for reinstatement." J.A. 125. Instead, in September 1995, Cochran filed a formal administrative complaint with the USMS's equal employment officer alleging discriminatory discharge and seeking immediate reinstatement. He explained that placement on the RPL was "not what [he] want[ed]." J.A. 383.

B.

Cochran's case followed a lengthy administrative path that we summarized in our prior decision, Cochran v. Holder, 564 F.3d 318, 320 (4th Cir. 2009). After being denied administrative relief, Cochran filed a civil complaint in federal court. He alleged two counts of employment discrimination under the RA. First, he claimed that his voluntary retirement in 1993 constituted a constructive discharge because the USMS terminated him "solely because of his disability and/or perceived disability," and that the USMS failed to provide him with a reasonable accommodation in lieu of retirement. J.A. 21-22. Second, Cochran claimed that the USMS impermissibly "refused" his requests for reinstatement in 1995, and that its refusal to immediately reemploy him either because its policy regarding

6

hearing aids was changing or because his hearing had recovered, also constituted discrimination.  J.A. 22-23.

The USMS responded to the filing of Cochran's civil complaint with a motion to dismiss the complaint as untimely, which the district court granted.  Cochran, 564 F.3d at 320.  We reversed and remanded for further proceedings.  Id. at 325.

Following additional discovery on remand, the district court granted summary judgment to the USMS, concluding that Cochran was not "disabled" within the meaning of the RA.  J.A. 39.  The court specifically found that Cochran was not substantially limited in the major life activities of hearing or working, that there was no record of his disability, and that he was not regarded as disabled by the USMS.  The court also concluded that Cochran was not a "qualified individual" for the position of a DUSM, and that he was not eligible for reinstatement.  J.A. 45-46, 54.

Cochran moved for reconsideration on the basis of newly discovered evidence.  The district court, construing the motion as one for relief from the judgment under Fed. R. Civ. P. 60(b) so as to render it timely, denied the motion on the ground that Cochran had failed to establish the existence of "extraordinary

circumstances" warranting such relief.  J.A. 57, 67.  This appeal followed.[2]

## II.

On appeal, Cochran first disputes the district court's determination that he was not "disabled" under the RA in 1993 or 1995 and that his claims of discrimination therefore failed.  We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Cochran, and drawing all reasonable inferences in his favor.  See Lettieri v. Equant Inc., 478 F.3d 640, 642 (4th Cir. 2007).  Summary judgment is appropriate if the record shows "there is no genuine

---

[2] The government argues that the bulk of this appeal is not properly before us because the district court abused its discretion in finding that Cochran demonstrated the "excusable neglect" necessary to extend the deadline for filing a notice of appeal under Fed. R. App. P. 4(a)(5).  Cochran responds that the government is precluded from advancing its argument because it failed to file a cross appeal, which is required for an appellee to argue for the reversal of a motion to extend the deadline to file an appeal.  Assuming, without deciding, that the government's claim is properly before us, we nevertheless find it unavailing.  We review the district court's grant of a filing extension for abuse of discretion. Thompson v. E.I. DuPont de Nemours & Co., Inc., 76 F.3d 530, 532 (4th Cir. 1996).  Under this deferential standard, we find that the district court's determination that excusable neglect existed in this case is supportable.  In particular, the record reflects that Cochran's attorney suffered a debilitating condition requiring major surgery that left her unable to work during the time the notice of appeal should have been filed.  See Plaintiff's Motion for Extension of Time to File Notice of Appeal, 06-cv-1328, Doc. No. 81 (E.D. Va. April 12, 2010).

dispute as to any material fact and that the [USMS] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

A.

We begin by addressing Cochran's claim that the USMS discriminated against him with respect to his voluntary retirement in 1993. To establish a prima facie case, a plaintiff must first show he was "an individual with a disability under the RA."[3]  Id. at 269; see also Pollard v. High's of Balt., Inc., 281 F.3d 462, 467 (4th Cir. 2002) (noting that the plaintiff bears the burden of demonstrating his disability).  The standards used to determine whether an employer has discriminated under the RA are the same standards applied under the Americans with Disabilities Act of 1990 ("ADA").  Hooven-Lewis, 249 F.3d at 268; see also 29 C.F.R. § 1614.203(b).  Under both the RA and the ADA, a plaintiff can make the requisite showing of a disability in one of three ways: (1) by demonstrating he has "a physical or mental impairment that substantially limits one or more of [his] major life

---

[3] A plaintiff may bring a claim under the RA either in the form of a "failure to accommodate" claim or a "disparate treatment" claim.  Throughout these proceedings, Cochran has attempted to allege both types of claims.  For either claim, however, the first step in our analysis is identical:  the plaintiff must establish that he was a qualified individual with a "disability" within the meaning of the Act.  Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001); Hooven-Lewis, 249 F.3d at 269.

9

activities," (2) by revealing "a record of such an impairment," or (3) by proving he is "regarded as having such an impairment." 29 C.F.R. § 1630.2(g)(1); see also id. § 1614.203(b).

As an initial matter, we address Cochran's argument that the standards announced in Toyota Motor Manufacturing v. Williams, 534 U.S. 184 (2002), and Sutton v. United Air Lines, Inc., 527 U.S. 471 (1991), for determining whether an individual is "disabled" "should only have limited applicability to this case." Appellant's Br. at 19. As Cochran's briefing emphasizes, Congress amended the ADA in 2008 to correct what it viewed as an overly restrictive interpretation of the statute's terms that had been adopted by the Supreme Court in Toyota and Sutton. See ADA Amendments Act of 2008, Pub. L. No. 110-325 ("ADAAA"). The ADAAA made it easier for a plaintiff to demonstrate his disability under the RA. In light of these changes, Cochran argues that we should "subordinate" the Toyota and Sutton decisions to earlier court rulings that employ a more lenient standard. Appellant's Br. at 21.

In order to do as Cochran asks, we would need to find that the ADAAA applies retroactively. While we have yet to rule on this issue, all circuits to consider the question have found that the ADAAA does not apply retroactively. See, e.g., Becerril v. Pima Cnty. Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009) (holding that the ADAAA does not apply

10

retroactively and collecting cases from the D.C., Fifth, Sixth, and Seventh Circuits reaching the same conclusion). Indeed, "absent clear congressional intent favoring such a result," we may not apply statutes retroactively. Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994); see also Chambers v. Reno, 307 F.3d 284, 288 (4th Cir. 2002). The ADAAA provides that "[t]his Act and the amendment made by this Act shall become effective on January 1, 2009." ADAAA § 8, 122 Stat. at 3559. Far from demonstrating a clear retroactive intent, the amendment evinces a prospective intent with its delayed effective date. We therefore follow our sister circuits in concluding that the ADAAA does not apply retroactively. This conclusion forecloses Cochran's argument that we should "subordinate" the holdings of Toyota and Sutton to the amendments and apply a more relaxed standard for purposes of this appeal.

1.

We turn now to whether Cochran has raised genuine issues of fact as to whether he was actually disabled, regarded as disabled, or had a record of disability at the time of his retirement. We begin by considering if, under the first disability formulation enumerated in the RA, Cochran was actually disabled. We can find that he has met his burden on this point only if he has adduced sufficient evidence to demonstrate that when he applied for voluntary retirement in

11

1993, he had a "physical or mental impairment" that "substantially limit[ed]" a "major life activit[y]." 29 C.F.R. § 1630.2(g)(1)(i).

The parties agree that hearing is a major life activity contemplated by the Act, see id. at § 1630.2(i)(1)(i), and that Cochran's hearing was at least somewhat impaired.[4] They disagree, however, as to whether his hearing loss "substantially limited" his hearing. The Supreme Court clarified in Toyota that "substantially" sets a high bar: "an individual must have an impairment that prevents or severely restricts the individual from" performing a major life activity. Toyota, 534 U.S. at 198 (emphasis added). Medical diagnoses alone cannot demonstrate substantiality; instead, a plaintiff must offer "evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." Id. (internal quotations and alterations omitted) (emphasis added).

The district court relied on three pieces of evidence to find that Cochran could not make out a prima facie case that his partial hearing loss severely restricted the major life activity of hearing. First, when asked in a deposition about his own

---

[4] The district court also analyzed whether Cochran's hearing loss might significantly limit the major life activity of "working" and concluded that it did not. However, Cochran's briefing on appeal focuses only on the activity of "hearing." We therefore limit our analysis to the impairment of that activity.

12

experience and whether his hearing was "giving [him] any problems on a day-to-day basis" as of his 1992 hearing tests, Cochran replied "[a]bsolutely not." J.A. 254. Second, the otolaryngologist's February 1993 report found that Cochran's hearing loss was "less than 10%." J.A. 317. Finally, although Cochran had been fitted for hearing aids in 1989, he chose not to wear them because he "didn't need them." J.A. 98.

On appeal, Cochran argues that the district court ignored evidence in the record that created genuine issues of material fact as to the degree of his hearing impairment and whether it qualified as "substantially limiting." For example, as we have noted, Cochran also testified that he did not wear his hearing aids because they were not "effective," J.A. 326, and that the type of digital hearing aid that corrected for his particular type of hearing loss was unavailable in 1993 and not provided to him until 1995. As to the substantiality of his hearing loss, Cochran points to his disability application where he also stated that his hearing loss "ha[d] created many problems at work and at home." J.A. 326. Cochran's arguments, however, misperceive the nature of summary judgment. He cannot create a genuine issue of material fact by pointing to contradictions in his own testimony. "[I]t is well established that 'a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's

13

testimony is correct.'" Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (quoting Halperin v. Abacus Tech. Corp., 128 F.3d 191, 198 (4th Cir. 1997)) (alterations omitted); see also S.P. v. City of Takoma Park, Md., 134 F.3d 260, 274 n. 12 (4th Cir. 1998) (disregarding affidavit of witness that contradicted witness's own prior sworn deposition testimony).[5] Cochran's sworn statement, under oath and under penalty of perjury, that at the time of his 1992 hearing examinations, his hearing was "absolutely not" giving him trouble on a day-to-day basis cannot be overcome by his later expositions in differing circumstances.

2.

We next consider whether, under the second disability formulation, Cochran has established he has a "record of such an impairment." 29 C.F.R. § 1630.2(g)(1)(ii). An individual has a record of a disability "if the individual has a history of . . . a mental or physical impairment that substantially limits one or more major life activities." Id. at 1630.2(k)(1). Cochran's argument under this category fails for the same reason that his claim to an actual disability under the first

_____

[5] Cochran also seeks to rely on information contained in a 1995 letter from the Department of Labor's Office of Workers' Compensation Programs ("OWCP"). However, as Cochran's counsel acknowledged at oral argument, the district court denied the admission of this letter into evidence, and it is therefore not before us.

14

formulation does. While there are reports establishing that Cochran no longer met the USMS hearing standards, those same reports indicated that, despite a more "severe level of hearing loss" in the high frequencies, Cochran's "binaural hearing loss would be less than 10%" overall "due to the better hearing in the lower frequencies." J.A. 317. This record does not establish a history of impairment that "substantially limit[ed]" Cochran's hearing. 29 C.F.R. § 1630.2(k)(1).

3.

Finally, we address whether Cochran demonstrated that he was "disabled" because the USMS "regarded" him as such. 29 C.F.R. § 1630.2(g)(1)(iii). Under this third formulation, Cochran must show that the USMS "entertain[ed] misperceptions about [him]" by believing he had a "substantially limiting impairment" that he did not in fact have or that was not "so limiting." Sutton, 527 U.S. at 489. Simply believing Cochran had an impairment is not enough under this inquiry. Rather, Cochran must prove that the USMS believed his hearing condition "substantially limit[ed] a major life activity." Id.

In attempts to meet this burden, Cochran argues that even if we find as a matter of law that he was not actually disabled under the RA as of 1993, his employer believed that he was. He points to a 2000 agency decision issued by the Department of Justice's Complaint Adjudication Office which states that the

15

"record supports the conclusion that [Cochran] was an individual with a disability." J.A. 129. However, the decision also explained that "this is not the only possible conclusion" given the intervening Supreme Court precedent establishing a more stringent definition of "disability." Id. at n.6. Consequently, the decision "assume[d]," without deciding, that Cochran was an individual with a disability, and proceeded to deny Cochran's claim on other grounds. Id. Such evidence simply does not establish that the USMS "regarded" Cochran as disabled within the meaning of the RA.

In sum, Cochran has failed to demonstrate that, at the point he opted for voluntary retirement in 1993, he was a disabled individual under any of the three formulations articulated in the RA. We need go no further to affirm the district court's grant of summary judgment to the USMS with respect to Cochran's first claim of discrimination.

B.

Cochran's second claim of discrimination involves his requests for reinstatement in 1995. As with the first claim, in order to survive summary judgment on this count, Cochran must first prove he is a qualified individual with a "disability" under the meaning of the RA. Hooven-Lewis, 249 F.3d at 269. Whereas we earlier applied the analysis to Cochran at the time

16

he opted for voluntary retirement, here we apply it to him at the time he requested reinstatement.

Cochran was not actually "disabled" when he sought reinstatement to the USMS in 1995. In a letter to Joseph Moy, USMS Chief of the Retirement and Benefits Branch, Cochran wrote

> I now have new hearing aids as of the first part of February 1995. According to the test by the audiologist, without hearing aids my hearing is within the acceptable level of the standards I was hired under. With hearing aids it is well above the standards. . . . All of this amounts to the following request[] . . . [t]o immediately have my job reinstated.

J.A. 203. To the extent Cochran requested reinstatement because the USMS had changed its policy to allow for the use of hearing aids during testing, his own account demonstrates that he was not disabled because the hearing aids he used corrected for any hearing deficiency. As the Supreme Court explained in Sutton, for purposes of determining if an individual is "disabled" under the RA, we consider whether "a person is taking measures to correct for, or mitigate, a physical or mental impairment." 527 U.S. at 482 (finding that petitioners were not "disabled" under the ADA, because the corrective measures actually taken by them corrected their vision to "20/20 or better") (emphasis added).[6]

---

[6] Because Cochran testified that he did not begin using hearing aids until after his voluntary disability took effect, we only consider the impact of that corrective measure on his second claim involving reinstatement in 1995, when he was (Continued)

17

Inasmuch as Cochran requested reinstatement because he had recovered his hearing sufficiently to meet the hearing standards without the use of hearing aids, his own claims show he suffered no "impairment," let alone a substantial one. Either way, Cochran has only presented evidence that his condition improved between 1993 and 1995. If he was not actually disabled in 1993, then he certainly could not have been actually disabled in 1995.

Cochran has introduced no evidence to suggest that he had a record of disability in 1995 or that the agency regarded him as disabled.[7] His failure to prove a "disability" under the RA also forecloses his second claim of discrimination.

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

---

actually using hearing aids. Sutton, 527 at 482 (considering "the effects of those measures" actually taken by the petitioners).

[7] In fact, Cochran attempted (unsuccessfully) to introduce into evidence a letter from the OWCP that purported to show that his employer regarded him as recovered and without the need for hearing correction. See J.A. 247-250.

18