[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10806

_____

Agency No. A35-730-532

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 31, 2009
THOMAS K. KAHN
CLERK

SANDRA FERGUSON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 31, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

HULL, Circuit Judge:

This petition requires us to address a question that has divided the other

circuits and presents an issue of first impression in ours. Does IIRIRA's[1] repeal of the INA's § 212(c) waiver provision[2] have an impermissible retroactive effect on aliens, like Sandra Ferguson, who were convicted of deportable criminal offenses before IIRIRA's effective date?

Until April 1, 1997 (the effective date of IIRIRA's repeal of § 212(c)), Ferguson was eligible to apply for a § 212(c) deportation waiver. But the INS initiated removal proceedings in 1998–over a year after § 212(c) was repealed. Despite its repeal, Ferguson maintains that IIRIRA has an impermissible retroactive effect and does not bar her from applying for § 212(c) relief. The question in Ferguson's petition is whether she can take advantage of the now-repealed § 212(c).

The Supreme Court has addressed this question before. See INS v. St. Cyr, 533 U.S. 289 (2001). It said that because a plea agreement "involves a quid pro quo between a criminal defendant and the government," id. at 321, aliens who pled guilty to a deportable offense "almost certainly relied" on the availability of § 212(c) relief in deciding to plead guilty and forgo their right to trial, id. at 325. Therefore, the repeal of § 212(c) has an impermissible retroactive effect on such

---

[1] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-597.

[2] The Immigration and Nationality Act ("INA"), § 212(c), 8 U.S.C. § 1182(c).

aliens, and they remain eligible for § 212(c) relief.  Id.

But Ferguson did not plead guilty.  She was convicted by a jury.  And therein lies her dilemma.

After determining that we have jurisdiction to hear the petition, we conclude that IIRIRA's repeal of § 212(c) does not have an impermissible retroactive effect on Ferguson.

## I.  Factual Background

Petitioner Sandra Ferguson emigrated from Jamaica to the United States, and on August 4, 1977, she was admitted as a lawful permanent resident.  Although her residence was lawful, her subsequent behavior was not.  On November 20, 1985, the State's Attorney of Cook County, Illinois charged her with possessing and intending to distribute 30 grams of cocaine.  See Ill. Rev. Stat. Ch. 56.5 § 1401-A(2) (1983).[3]

On July 7, 1986, following a trial in the Circuit Court of Cook County, the jury convicted Ferguson.  On September 9, 1986, the circuit court sentenced Ferguson to six years in prison.  But she served only two years and nine months.

---

[3]The Illinois indictment contained the above citation.  It appears to be consistent with the following citation:  Ill. Comp. Stat., Ch. 56.5 § 1401(a)(2) (West 1988).

About ten years later, on July 5, 1998, the INS[4] served Ferguson with a Notice to Appear charging her with removability under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), for committing a controlled substances offense. On May 18, 1999, before the Immigration Judge ("IJ"), Ferguson admitted this charge in the Notice to Appear.[5] But she denied that she was removable.

The IJ found Ferguson removable, pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), based on her admissions and the evidence of her felony drug conviction. The IJ found that "the nature of her conviction" made her ineligible for cancellation of removal under INA § 240(a), 8 U.S.C. § 1229b.[6] The

_____

[4]On March 1, 2003, the INS ceased to exist. Its functions, now housed in the Department of Homeland Security ("DHS"), are divided principally among three agencies: U.S. Immigrations and Customs Enforcement, U.S. Customs and Border Protection, and U.S. Citizenship and Immigration Services.

[5]The INS also charged Ferguson with removability for committing an aggravated felony. See INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii); INA § 101(a)(43)(f), 8 U.S.C. § 1101(a)(43)(f). Ferguson denied that she committed an aggravated felony, and the INS subsequently withdrew the claim as it pertained to her removability charge. But, as we explain below, the INS (and later the DHS) maintained that her controlled substances offense qualified as an aggravated felony for purposes of determining whether Ferguson was eligible for cancellation of removal. See footnote 6 infra.

[6]An alien "convicted of any aggravated felony" is ineligible for cancellation of removal. 8 U.S.C. § 1229b(a)(3). See Chuang v. U.S. Att'y Gen., 382 F.3d 1299, 1303 (11th Cir. 2004) ("IIRIRA§ 304(b) repealed INA § 212(c) and replaced it with a more restrictive provision in INA § 240(a) called 'cancellation of removal.' See 8 U.S.C. § 1229b. . . . § 304 of IIRIRA provided that cancellation of removal was not available to an alien convicted of any aggravated felony." (citation and quotation marks omitted)); Mohammed v. Ashcroft, 261 F.3d 1244, 1248 n.3 (11th Cir. 2001) ("Status as an 'aggravated felon' renders an alien ineligible for discretionary relief–called cancellation of removal–under 8 U.S.C. § 1229b."). The INA defines an "aggravated felony" as including a "drug trafficking crime (as defined in section 924(c) of Title 18)." INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B). "[T]he term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act [("CSA")] (21 U.S.C. 801 et

IJ ordered her removed to Jamaica.

Ferguson appealed to the Board of Immigration Appeals ("BIA"). Ferguson argued that she was eligible for cancellation of removal under § 240(a) because, at the time of her conviction in 1986, her crime was not considered an "aggravated felony" under immigration law. The BIA rejected her § 240(a) argument. But it remanded, in light of INS v. St. Cyr, 533 U.S. 289 (2001), to determine whether Ferguson might be eligible for discretionary relief from the Attorney General under INA § 240(a)'s predecessor–the now-repealed INA § 212(c), 8 U.S.C. § 1182(c).

Because the record was ambiguous as to whether Ferguson was convicted at trial or pled guilty, the BIA remanded to the IJ to figure it out. At an evidentiary hearing before the IJ, Ferguson admitted that she was convicted at trial. But she argued that she was still eligible for a deportation waiver because, at the time Congress repealed § 212(c) in 1996, she was still eligible to apply for such relief. In other words, she argued that the repeal of § 212(c) does not apply retroactively to those who were eligible to apply for such relief before the date of repeal.[7]

---

seq.). . . ." 18 U.S.C. § 924(c)(2). And the CSA, in turn, defines a "felony" as an offense for which "the maximum term of imprisonment authorized" exceeds one year. 18 U.S.C. § 3559(a).

That arduous maze of statutory interpretation all means that Ferguson was not entitled to cancellation of removal because her felony drug crime, for which she was sentenced to five years in prison, constituted an "aggravated felony."

[7]Ferguson further argued that, pursuant to Cunningham v. U.S. Att'y Gen., 335 F.3d 1262, 1267 (11th Cir. 2003), she was eligible for § 212(c) relief because the INS served her with an Order to Show Cause (the precursor to the Notice to Appear) while she was still in prison in 1986 (and before Congress repealed § 212(c)). The IJ rejected Ferguson's Cunningham

The IJ found that she was convicted at trial. Therefore, the IJ again determined that she was ineligible for a § 212(c) waiver and reinstated the removal order. Ferguson again appealed to the BIA and challenged the IJ's ruling on § 212(c) availability. Her appeal raised the same arguments that she made before the IJ.

The BIA affirmed the IJ's decision "in its entirety." The BIA rejected Ferguson's § 212(c) argument. It determined that a federal regulation made Ferguson ineligible. The BIA pointed to 8 C.F.R. § 1212.3(f)(4) as support for its conclusion that only individuals who pled guilty prior to the change in the law are eligible for § 212(c) relief.[8] The BIA based its ruling on the "clear language" of

argument because she had no documentation to support her assertion that the INS began deportation proceedings prior to the repeal of § 212(c).

     The BIA affirmed. It determined that Ferguson had no proof that the INS served her with an Order to Show Cause in 1986. Here, Ferguson does not dispute the BIA's rejection of her claim as unsubstantiated by any evidence. Rather, Ferguson focuses her petition on whether § 212(c) applies to aliens who were convicted at trial prior to the date of § 212(c)'s repeal. Thus, Ferguson has abandoned her claim that she was served in 1986. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

     [8] 8 C.F.R. 1212.3(f) provides, in part:
(4) The alien has been charged and found to be deportable or removable on the basis of a crime that is an aggravated felony, as defined in section 101(a)(43) of the Act (as in effect at the time the application for section 212(c) relief is adjudicated), except as follows:

       (i) An alien whose convictions for one or more aggravated felonies were entered pursuant to plea agreements made on or after November 29, 1990, but prior to April 24, 1996, is ineligible for section 212(c) relief only if he or she has served a term of imprisonment of five years or more for such aggravated felony or felonies, and

       (ii) An alien is not ineligible for section 212(c) relief on account of an

6

the federal regulation and the absence of any Eleventh Circuit authority extending St. Cyr to trial-based convictions as opposed to guilty pleas.

Ferguson filed a petition for review with this Court. The petition requires us to answer two questions. First, do we have jurisdiction to hear Ferguson's challenge to the BIA's pretermition of her application for a § 212(c) deportation waiver? Second, does IIRIRA's repeal of § 212(c) relief have an impermissible retroactive effect on aliens, like Ferguson, who were convicted of deportable criminal offenses by a jury prior to IIRIRA's effective date?

## II. Jurisdiction

This Court's jurisdiction to review Ferguson's removal order is limited. Congress has divested courts of "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed," among other things, a controlled substances offense. See INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or

---

aggravated felony conviction entered pursuant to a plea agreement that was made before November 29, 1990; or
(5) The alien is deportable under former section 241 of the Act or removable under section 237 of the Act on a ground which does not have a statutory counterpart in section 212 of the Act.

7

(D) of this title.").[9]  And Ferguson does not contest that she is removable under

INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(A)(iii).  But we retain jurisdiction to

review "constitutional claims or questions of law raised upon a petition for

review."  INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D); see Alvarez Acosta v.

U.S. Att'y Gen., 524 F.3d 1191, 1195-96 (11th Cir. 2008); Alexandre v. U.S. Att'y

Gen., 452 F.3d 1204, 1206 (11th Cir. 2006) (exercising jurisdiction under §

1252(a)(2)(D) to review petitioner's legal argument as to eligibility for relief under

§ 212(c)); Balogun v. U.S. Att'y Gen., 425 F.3d 1356, 1360 (11th Cir. 2005)

(discussing legislative history of § 1252(a)(2)(D)).

Here, Ferguson raises a pure question of law.  That is, she argues that

IIRIRA's repeal of § 212(c) has an impermissible retroactive effect on aliens like

herself.  She asks us to extend the holding of INS v. St. Cyr, 533 U.S. 289, 326

(2001), to aliens convicted after a trial.  Id. (holding "that § 212(c) relief remains

available to aliens . . . whose convictions were obtained through plea agreements

and who, notwithstanding those convictions, would have been eligible for § 212(c)

relief at the time of their plea under the law then in effect").

---

[9]Section 1182(a)(2)(A)(i)(III) includes a crime that involves "a violation of . . . any law of a State . . . relating to a controlled substance."  Section 1227(B)(i) includes "a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance."  Under § 1252(a)(2)(C), our jurisdiction is limited to determining whether a petitioner is an (1) alien (2) who is removable (3) for a disqualifying offense.  Moore v. Ashcroft, 251 F.3d 919, 922-23 (11th Cir. 2001).

This is not the first time that we have been presented with a similar legal issue. But the last time we were, a jurisdictional bar stood in our way. In Brooks v. Ashcroft, 283 F.3d 1268, 1274-75 (11th Cir. 2002), this Court concluded that we lacked jurisdiction to review "the purely statutory question" of whether AEDPA[10] and IIRIRA applied retroactively to bar the petitioner's eligibility for § 212(c) relief. Subsequently, Congress enacted 8 U.S.C. § 1252(a)(2)(D), which removes that jurisdictional bar and supersedes the jurisdictional part of Brooks. See the Real ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005) (authorizing judicial review of "questions of law"). Furthermore, Ferguson's petition does not question the IJ or the BIA's exercise of discretion. Rather, she challenges the BIA's interpretation of St. Cyr. We therefore have jurisdiction to address the pure question of law raised by Ferguson's petition.

### III.  St. Cyr and Impermissible Retroactivity

The outcome of this case turns largely on our interpretation of the Supreme Court's decision in St. Cyr. Therefore, we begin by recounting St. Cyr. Because the circuit courts are divided on this issue, we examine their approaches as well. We then examine what we have said, albeit in dicta, about St. Cyr. Lastly, we apply the law to Ferguson.

---

[10]The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, § 440(d), 110 Stat. 1214 (1996).

## A. **INS v. St. Cyr**

INS v. St. Cyr addressed the way that two statutory amendments to the

INA—namely, AEDPA and IIRIRA—impacted § 212(c), 8 U.S.C. § 1182(c).[11]

Before AEDPA and IIRIRA, § 212(c) authorized the Attorney General, in her

discretion, to waive an alien's deportation if the alien was a lawful permanent

resident who had lived in the United States continuously for seven years.  INA

§ 212(c), 8 U.S.C. § 1182(c).[12]  Congress first began tinkering with § 212(c) relief

with the Immigration Act of 1990.  See Pub. L. No. 101-649, § 511(a), 104 Stat.

4978, 5052 (IMMACT-90).  That Act "amended § 212(c) to preclude from

discretionary relief anyone convicted of an aggravated felony who had served a

---

[11]INA § 212(c) states:
Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General. . . . Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.
INA § 212(c), 8 U.S.C. § 1182(c).

[12]Although § 212(c), as written, applies only to excludable aliens (as opposed to deportable aliens), courts and the BIA have interpreted it to authorize any permanent resident alien with a lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver from deportation if the basis of the removal has a statutory counterpart in exclusion under § 212(a).  See Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1324-25 (11th Cir. 2001); Yeung v. INS, 76 F.3d 337, 338-41 (11th Cir. 1995); Rodriguez-Padron v. INS, 13 F.3d 1455, 1457-59 (11th Cir. 1994).  Thus, to be eligible for § 212(c) relief, Ferguson must show that the basis for removal—a controlled substance offense—has a comparable statutory basis for exclusion under § 212(a).  See Farquharson, 246 F.3d at 1324-25; Yeung, 76 F.3d at 338-41; Rodriguez-Padron, 13 F.3d at 1457-59; see also 8 CFR § 1212.3(f)(5).  The INS does not dispute that Ferguson has done that.

10

term of imprisonment of at least five years." St. Cyr, 533 U.S. at 297.

In 1996, Congress amended § 212(c) two more times. See Chuang v. U.S. Att'y Gen., 382 F.3d 1299, 1302-03 (11th Cir. 2004) (summarizing impact of AEDPA and IIRIRA on § 212(c)). First, it passed AEDPA. Section 440(d) of that statute bars § 212(c) relief for aliens who committed a broad set of offenses, including a controlled substances offense. See 110 Stat. 1277 (amending 8 U.S.C. § 1182(c)). And in September of 1996, IIRIRA repealed § 212(c) relief altogether. See § 304(b), 110 Stat. 3009-597. In its place, Congress created a "cancellation of removal" procedure. St. Cyr, 533 U.S. at 297 (citing IIRIRA § 304(b), 110 Stat. 3009-594) (codified at 8 U.S.C. § 1229b).[13] IIRIRA § 304(b) stripped the Attorney General's authority to waive deportation, now called removal, for any alien convicted of an "aggravated felony." Id.

St. Cyr addressed whether an alien who was convicted of a deportable offense was still eligible for § 212(c) relief where (1) he was convicted of an aggravated felony in March of 1996, (2) deportation proceedings did not begin until April 10, 1997 (after both IIRIRA and AEDPA went into effect), and (3) he

---

[13]8 U.S.C. § 1229b(a)'s "cancellation of removal" provision provides:
The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien–
   (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
   (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
   (3) has not been convicted of any aggravated felony.

was otherwise eligible to apply for § 212(c) relief but for the retroactive application of IIRIRA and AEDPA. 533 U.S. at 315. Put differently, the question was whether IIRIRA's repeal of § 212(c) relief had an impermissible retroactive effect on aliens whose convictions were obtained through guilty pleas, notwithstanding the fact that they were eligible for § 212(c) relief at the time they pled guilty.

The Supreme Court said yes. Drawing on Landgraf v. USI Film Products, 511 U.S. 244 (1994), the Supreme Court held that IIRIRA had an impermissible retroactive effect on aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." St. Cyr, 533 U.S. at 326.

The Supreme Court first explained that "[r]etroactive statutes raise special concerns." Id. at 315. It reasoned that the "presumption against retroactive legislation is deeply rooted in our jurisprudence" and "embodies a legal doctrine centuries older than our Republic." Id. at 316 (quotation marks omitted). And it warned that retroactive legislation has the power to "sweep away settled expectations suddenly and without individual consideration" and raises the specter that Congress "may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals." Id. at 315. Although

12

Congress has the power to enact laws with retroactive effect, Congress must clearly indicate that it intended such a result. Id. at 316. Accordingly, "'congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result.'" Id. at 315-16 (omission in original) (quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988)).

Therefore, the first step in the impermissible-retroactive-effect determination is to ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively. Id. at 316. The Supreme Court held that IIRIRA failed that test. Id. at 319-20. But the absence of clear intent did not end the Supreme Court's Landgraf analysis.

Rather, the Supreme Court instructed that even if Congress has not spoken clearly, courts must proceed to a second step to determine whether depriving removable aliens of consideration for § 212(c) relief produced an "impermissible retroactive effect" for aliens convicted pursuant to a guilty plea. Id. at 320. This second inquiry into whether a statute operates retroactively requires courts to make a "commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 321 (quotation marks and citation omitted). "A statute has retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to

13

transactions or considerations already past." Id. (quotation marks and citations omitted) (emphasis added). The Supreme Court did not stop there. It added that "the judgment whether a particular statute acts retroactively 'should be informed and guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations."'" Id. (quoting Martin v. Hadix, 527 U.S. 343, 358 (1999) (quoting Landgraf, 511 U.S. at 270)) (emphasis added).

Applying this framework to those who "entered into plea agreements with the expectation that they would be eligible for [§ 212(c)] relief," the Supreme Court in St. Cyr first determined that IIRIRA's repeal of "any possibility of § 212(c) relief . . . clearly attaches a new disability, in respect to transactions or considerations already past." Id. (quotations marks and citations omitted). To demonstrate a new disability to a past transaction or consideration, the Supreme Court explained that aliens reasonably rely on the possibility of obtaining § 212(c) relief in considering whether to waive their right to trial and plead guilty:

> Plea agreements involve a quid pro quo between a criminal defendant and the government. In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources. There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions. Given the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits

14

sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.

Id. at 321-22 (quotation marks and citations omitted). The key "transaction" or "consideration already past" was the alien's decision to abandon his constitutional right to trial and plead guilty in reliance on the old § 212(c). Id. at 325. "Because respondent, and other aliens like him, almost certainly relied upon that likelihood in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect." Id.

Accordingly, the Supreme Court held that "§ 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." Id. at 326. The Supreme Court did not directly address whether an alien who pled guilty had to show individualized reliance on § 212(c) in entering a guilty plea or whether the class of aliens who pled guilty reasonably relied on § 212(c). But the tenor of St. Cyr as a whole appears to treat aliens who pled guilty before IIRIRA as a group of similarly-situated applicants eligible for such relief. Id. at 322 ("There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions."); id. at 325-26 (concluding that St. Cyr "and other aliens like him"

15

remain eligible for § 212(c) relief); id. at 325 ("Because respondent, and other aliens like him, almost certainly relied upon that likelihood in deciding whether to forego their right to a trial . . . ."); id. at 323 ("Given the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.").[14]  As noted earlier, Ferguson did not plead guilty, and she asks us to extend St. Cyr outside of the guilty plea context.

## B. Other Circuits' Approaches

The circuits are split on how to apply St. Cyr to aliens outside of the guilty plea context.

The majority of circuits to address the issue have held that IIRIRA does not have an impermissible retroactive effect on aliens who relied on § 212(c) relief in deciding to go to trial.  See Hernandez-Castillo v. Moore, 436 F.3d 516, 520 (5th

[14]See Wilson v. Gonzales, 471 F.3d 111, 119 (2d Cir. 2006) (discussing St. Cyr and concluding the Supreme Court endorsed the categorical presumption that it would be impermissible to apply the repeal of § 212 retroactively to the category of aliens who pled guilty before IIRIRA); Thaqi v. Jenifer, 377 F.3d 500, 504 n.2 (6th Cir. 2004) (noting that "under St. Cyr, the petitioner need not demonstrate actual reliance upon the immigration laws in order to demonstrate an impermissible retroactive effect; he need only be among a class of aliens whose guilty pleas 'were likely facilitated' by their continued eligibility for § 212(c) relief"); see also Garcia-Echaverria v. United States, 376 F.3d 507, 515 (6th Cir. 2004) (stating in dicta that "St. Cyr aids only those aliens whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for [discretionary cancellation of removal] at the time of their plea under the law then in effect" (quotation marks and emphasis omitted) (alteration in original)).

16

Cir. 2006); Montenegro v. Ashcroft, 355 F.3d 1035, 1036-37 (7th Cir. 2004);

Rankine v. Reno, 319 F.3d 93, 102 (2d Cir. 2003); Chambers v. Reno, 307 F.3d

284, 290-93 (4th Cir. 2002); Dias v. INS, 311 F.3d 456, 458 (1st Cir. 2002)

("[A]pplication of the new statutory limitations on discretionary relief does not

have an impermissible retroactive effect on those aliens who would have been

eligible for discretionary relief when they were convicted of a felony after trial.");

see also Saravia-Paguada v. Gonzales, 488 F.3d 1122, 1131 (9th Cir. 2007), cert.

denied, 128 S. Ct. 2499 (2008) (indicating that, "[i]n our circuit, we have generally

limited St. Cyr to the factual context of a guilty plea," and "[o]utside of the plea

bargain context . . . we have declined to invalidate retroactive elimination of §

212(c) relief"); Armendariz-Montoya v. Sonchik, 291 F.3d 1116, 1121 (9th Cir.

2002) (stating that unlike aliens who pled guilty, "aliens who elected a jury trial

cannot plausibly claim that they would have acted any differently if they had

known about [AEDPA's] § 440(d)").[15]

"[A]liens who chose to go to trial are in a different position with respect to

IIRIRA than aliens like St. Cyr who chose to plead guilty" because "none of

[them] detrimentally changed his position in reliance on continued eligibility for

---

[15]In Saravia-Paguada, the Ninth Circuit interpreted Armendariz-Montoya as classifying reliance on § 212(c) when an alien goes to trial as "per se unreasonable," and emphasized that the decision "reaffirmed a narrow reading of St. Cyr and excluded categorically claims for § 212(c) relief outside the guilty plea context." 488 F.3d at 1131.

§ 212(c) relief." Rankine, 319 F.3d at 99. Such aliens "have pointed to no conduct on their part that reflects an intention to preserve their eligibility for relief under § 212(c) by going to trial." Id. at 100; Hernandez-Castillo, 436 F.3d at 520 (quoting Rankine);[16] Chambers, 307 F.3d at 291 ("[I]n contrast to aliens who plead guilty, Chambers [in proceeding to trial] made no decision that adversely impacted his immigration status."). "As the [Supreme] Court made clear, it was that reliance, and the consequent change of immigration status, that produced the impermissible retroactive effect of IIRIRA." Rankine, 319 F.3d at 100; see Chambers, 307 F.3d at 290 ("The key event in terms of St.Cyr's analysis . . . was the alien's decision to abandon his constitutional right to a trial and plead guilty to a deportable offense in reliance on prior law."); Montenegro, 355 F.3d at 1037 ("But this exception does not apply to aliens like Montenegro who chose to go to trial; such aliens did not abandon any rights or admit guilt in reliance on continued eligibility for § 212(c)

_____

[16]Indeed, aliens who choose to go to trial do not do so in reliance on the availability of § 212(c) relief. They do so to fight their criminal charges. Rankine, 319 F.3d at 99-100 (noting that St. Cyr's rationale does not extend to such a "hollow" claim); see also Domond v. INS, 244 F.3d 81, 86 (2d Cir. 2001) ("[I]t cannot reasonably be argued that aliens committed crimes in reliance on a hearing that might possibly waive their deportation."); Lara-Ruiz v. INS, 241 F.3d 934, 945 (7th Cir. 2001) ("[I]t would border on the absurd to argue that an alien would refrain from committing crimes or would contest criminal charges more vigorously if he knew that after he had been imprisoned and deported, a discretionary waiver of deportation would no longer be available to him. Thus, Lara-Ruiz cannot seriously maintain that the application of any rule barring discretionary relief from removal or deportation would upset his settled expectations sufficiently to trigger the presumption against retroactivity.") (quotation marks and citation omitted).

18

relief.");[17] <u>Mbea v. Gonzales</u>, 482 F.3d 276, 281 (4th Cir. 2007) ("We held that IIRIRA's repeal of § 212(c) did not produce an impermissibly retroactive effect as applied to an alien convicted after trial.").[18]

As noted, the Second Circuit has expressly refused to extend <u>St. Cyr</u> to aliens who proceeded to trial. <u>Rankine</u>, 319 F.3d at 102 ("Because we have not found a persuasive argument that the holding in <u>St. Cyr</u> can be extended to cover those aliens who were convicted at trial rather than pursuant to a plea, we conclude that the repeal of § 212(c) relief does not have an impermissibly retroactive effect when applied to petitioners."); <u>Chambers</u>, 307 F.3d at 290-93. Subsequently, in <u>Restrepo v. McElroy</u>, 369 F.3d 627, 634 (2d Cir. 2004), the Second Circuit "fine-tuned its <u>St. Cyr-Rankine</u> jurisprudence" and "held that under certain limited circumstances, an alien-defendant who was convicted pursuant to a jury trial prior

_____

[17]Under the the Seventh Circuit's approach, even though <u>St. Cyr</u> protects aliens who pled guilty, they must still demonstrate that they <u>actually relied</u> on the availability of § 212(c) in deciding to plead guilty. <u>United States v. De Horta Garcia</u>, 519 F.3d 658, 661 (7th Cir.), <u>cert. denied</u>, 129 S. Ct. 489 (2008).

[18]In another line of authority, the Fourth Circuit seems to reject actual reliance as a necessary component of the retroactivity analysis. <u>See</u> <u>Olatunji v. Ashcroft</u>, 387 F.3d 383, 392 (4th Cir. 2004) ("[F]ar from holding that reliance is the sine qua non of retroactivity, both <u>Chambers</u> and <u>Velasquez-Gabriel</u> said precisely the opposite, that even aliens who have not detrimentally relied on pre-IIRIRA law can sustain a claim that IIRIRA is impermissibly retroactive." (emphasis omitted)). But the impact of <u>Olatunji</u> is unclear as it did not involve § 212(c), but rather the retroactive application of a different IIRIRA provision (that rendered Olatunji "inadmissible" pursuant to a conviction). <u>Id.</u> at 386. As the Tenth Circuit noted, "there is tension between <u>Olatunji</u> and <u>Chambers</u>, but [we] observe that they construe different provisions of the INA. . . . This broad repudiation of reliance is potentially in conflict with the reasoning of <u>Chambers,</u> which gives reliance a central role in its analysis." <u>Hem v. Maurer</u>, 458 F.3d 1185, 1192 n.4 (10th Cir. 2006).

19

to the enactment of AEDPA could still potentially be eligible for § 212(c) relief."

See Wilson v. Gonzales, 471 F.3d 111, 120 (2d Cir. 2006). In Restrepo, the

Second Circuit concluded that an alien may show detrimental reliance when he

decides to "forgo the immediate filing of a 212(c) application based on the

considered and reasonable expectation that he would be permitted to file a stronger

application for 212(c) relief at a later time." 369 F.3d at 634-35. The Second

Circuit noted that the

> undermining of this settled expectation represents a prototypical case of retroactivity. Just like the aliens in St. Cyr, who sacrificed something of value—their right to a jury trial, at which they could obtain outright acquittal—in the expectation that their guilty pleas would leave them eligible for 212(c) relief, an alien like Petitioner also sacrificed something—the shot at obtaining 212(c) relief by immediately filing an application—in order to increase his chances of obtaining such relief later on. Such an alien conformed his or her conduct according to the availability of relief, and therefore had settled expectations that would be severely upset, were the AEDPA to be applied retroactively.

Id. (quotation marks, citations, and footnote omitted). In other words, aliens in the

Second Circuit can prove detrimental reliance, under the St. Cyr framework, by

showing that they affirmatively chose to forego filing their § 212(c) application for

discretionary relief in order to build up a better record and boost the odds that their

applications would be granted. Id. In Restrepo, the Second Circuit remanded for

the district court to determine in the first instance: (1) whether Restrepo must

make an individualized showing of reliance instead of reaping the benefit of a

20

categorical presumption of reliance; and (2) if so, whether Restrepo could make that showing. Id. at 638-39. Since Restrepo, the Second Circuit has required an "individualized showing of reliance" to prove such claims. Wilson, 471 F.3d at 122. "Merely knowing of the continued availability of § 212(c) relief is not the equivalent to affirmative reliance in its continued availability." Id.

The Fifth Circuit follows the Restrepo approach. See Carranza-De Salinas v. Gonzales, 477 F.3d 200, 208-09 (5th Cir. 2007) ("We find the reasoning of the Restrepo Court persuasive and see no need to create a circuit split on this issue."). But outside of the guilty plea context, the Fifth Circuit, like the Second, requires a showing of individualized reliance as opposed to a categorical presumption of reliance. Id. at 205 ("After Hernandez-Castillo, this circuit requires an applicant who alleges continued eligibility for § 212(c) relief to demonstrate actual, subjective reliance on the pre-IIRIRA state of the law to be eligible for relief from its retroactive application."). Under this approach, "[b]ecause the reliance demonstrated must be actual, the determination of retroactive effect is made as to the individual applicant, not as to a group of similarly-situated applicants." Id.

The Tenth Circuit extends St. Cyr beyond the guilty plea context and rejects a requirement of actual, subjective reliance. See Hem v. Maurer, 458 F.3d 1185, 1189 (10th Cir. 2006). In Hem, the Tenth Circuit found that an alien shows objectively reasonable reliance on § 212(c) relief where she gives up her right to

21

appeal her criminal conviction.[19] Id. But its approach is not limited to those who gave up their appeals. Its general approach is to determine "whether the class of persons affected by retroactive application of a statute had an objectively reasonable interest in the previous state of the law." Id. at 1200. "Aliens, like Hem, who were in a position in which the availability of § 212(c) relief would reasonably inform their decision to forego a constitutional right, would suffer 'new legal consequences to events completed before [the statute's] enactment,' Landgraf, 511 U.S. at 269-70, under IIRIRA § 304(b)." Id. at 1200-01.[20] Therefore, such aliens are eligible for § 212(c) relief.

The Third Circuit, on the other hand, does not require aliens to show reliance or a reliance interest—either objective or subjective—on § 212(c) relief and has

---

[19]Under Hem, an alien does not show objective reliance by simply foregoing the right to appeal. Rather, the alien must also show that a successful appeal would have placed him "at risk of being sentenced to a sentence longer than 5 years . . . making him ineligible for § 212(c) relief." Hem, 458 F.3d at 1199. Indeed, Hem was sentenced to three years. Therefore, resentencing carried the risk of a sentence longer than five years, which would have shut the door on his hopes of § 212(c) relief. See footnote 22 infra (explaining IMMACT-90's five year bar).

[20]In Hem, the question was whether "[a]liens, like Hem, who were in a position in which the availability of § 212(c) relief would reasonably inform their decision to forego a constitutional right, would suffer new legal consequences to events completed before the statute's enactment under IIRIRA § 304(b)." Hem, 458 F.3d at 1200-01. The petitioner in Hem was able to prove that she was part of a class of "[a]liens who gave up their right to appeal their aggravated felony conviction when a successful appeal could have deprived them of § 212(c) eligibility." Id. at 1199; see id. at 1200 ("When a defendant, like Hem, proceeds to trial, is convicted, chooses not to pursue an appeal when that appeal could result in the loss of § 212(c) relief, and subsequently loses the availability of § 212(c) relief following the Attorney General's decision to apply IIRIRA § 304(b) retroactively, his right to appeal has been retroactively impaired."). And, therefore, the Tenth Circuit held that Hem was still eligible for § 212(c) relief.

22

concluded that IIRIRA's repeal of § 212(c) is impermissibly retroactive in that it attaches new legal consequences to an alien's criminal conviction. See Atkinson v. Att'y Gen., 479 F.3d 222, 231 (3d Cir. 2007). Because the Third Circuit's approach substantially differs from that of the other circuits, and because Ferguson urges us to adopt it, we discuss it in some detail. In the Third Circuit's view, the Supreme Court "has never held that reliance on the prior law is an element required to make the determination that a statute may be applied retroactively." Id. at 227-28. "[R]eliance is but one consideration in assessing whether a statute attaches new legal consequences to past events." Id. at 231. The Third Circuit reads Supreme Court precedent not as requiring that the alien must have relied on the old § 212(c), but rather as undertaking a "general analysis of the impact of the amendment, finding retroactivity improper because the amendment instituted a legal change that attached a new legal burden to the proscribed conduct." Id. at 228. "Impermissible retroactivity, as defined in Landgraf, does not require that those affected by the change in law have relied on the prior state of the law." Id. at 229.

Therefore, based on its interpretation of St. Cyr and Landgraf, the Third Circuit phrased the relevant question as only: "Does applying IIRIRA to eliminate the availability of discretionary relief under former section 212(c) attach new legal consequences to events completed before the repeal?" Id. at 230. It answered that

23

question by using Atkinson's conviction as the event completed, noting that

> Atkinson's case presents a straightforward application of the retroactive effect test. IIRIRA has plainly attached new legal consequences to Atkinson's conviction. Prior to IIRIRA's enactment, Atkinson remained free to apply for a waiver under section 212(c) despite his conviction of an aggravated felony. After IIRIRA, he lost that right; applying basic principles of retroactivity, IIRIRA attached a new legal consequence to Atkinson's conviction: the certainty–rather than the possibility–of deportation. Such a change in legal consequences based on events completed before IIRIRA's enactment constitutes an impermissible retroactive effect.

Id. (citation omitted).[21] While the law of the circuits is not uniform, none of the other circuits has adopted the Third Circuit's approach.

## C. Eleventh Circuit's Interpretations of St. Cyr

Although our Court has not squarely decided the retroactivity issue splitting the circuits, we have come close to doing so on two occasions. We have all but

---

[21]In the Third Circuit's view, "[n]owhere in the Supreme Court's jurisprudence . . . has reliance become the sine qua non of the retroactive effects inquiry. Moreover, nothing in the Landgraf line of cases supports the theory that the limits of permissible retroactivity are different for one group–those who accept (or consider) a plea agreement–than they are for another–those who exercise their constitutional right to a trial." Atkinson, 479 F.3d at 231 (citation omitted).

The Fourth Circuit in Chambers expressly rejected the view, taken by the Third Circuit, that the repeal of § 212(c) creates "new legal consequences." 307 F.3d at 293. Whereas the Third Circuit identified the relevant past conduct as the alien's conviction (when determining that IIRIRA imposes "new legal consequences" on that act), the Fourth Circuit treated the relevant past conduct as the "decision to go trial." Id. The Fourth Circuit also reasoned that in St. Cyr, the alien's decision to plead guilty "immediately changed his status from non-deportable to deportable." Id. at 290. In contrast, an alien like Chambers–who did not plead guilty–made "no decision that adversely impacted his immigration status." Id. at 291. "IIRIRA did not change the impact of Chambers' decision to go to trial on his immigration status. . . . Chambers' decision to go to trial did not render him deportable or subject him to certain deportation, regardless of whether pre- or post-IIRIRA law is applied." Id. at 293.

24

said that St. Cyr's retroactivity analysis does not apply to aliens who were convicted after a trial–as opposed to a guilty plea–and that § 212(c) relief is, therefore, not available to such aliens.  Here, we examine our two prior decisions.

In Alexandre v. United States Attorney General, 452 F.3d 1204, 1205 (11th Cir. 2006), this Court addressed the BIA's denial of Alexandre's "motion to reopen his deportation proceedings in order to permit him to apply for relief under former INA § 212(c)."  The BIA denied the motion and concluded that Alexandre was ineligible for § 212(c) relief.  Id.  Alexandre (1) had been convicted of drug charges (considered an "aggravated felony"), (2) following a 1989 jury trial, and (3) had served five years of his sentence.  Id.  Relying on the five-year bar in the Immigration Act of 1990, Pub. L. No. 101-649, § 511(a), 104 Stat. 4978, 5052 ("IMMACT-90"),[22] the BIA determined that Alexandre was precluded from seeking § 212(c) relief.  Id. at 207.

This Court denied Alexandre's petition for review of the BIA's denial of his motion to reopen.  Id. at 1207.  We noted that Alexandre was convicted in 1989 and that when deportation proceedings began in 1994 "he had served at least 5 years of his sentence."  Id.  We stated that "the retroactivity rationale of St. Cyr does not apply to IMMACT-90."  Id.  "Thus, at the time of his deportation

_____

[22]IMMACT-90 "provided that an alien convicted of an aggravated felony who had served at least five years of his sentence could not seek a waiver of inadmissibility under then INA § 212(c)."  Alexandre, 452 F.3d at 1207.

25

proceedings, [Alexandre] was ineligible for § 212(c) relief because of the five-year bar." Id. Citing federal regulation 8 C.F.R. § 1003.44(a) we also stated that "§ 212(c) relief is not available to aliens who were convicted after a trial instead of on a guilty plea." Id.

Although Alexandre argued that IMMACT-90's five-year bar produced "an impermissible retroactive effect because he committed his crime before the statute including [the bar] was passed," this Court determined that his "argument was resolved in [his] initial appeal before the BIA, and for that reason it [was] not properly before us" in the petition for review of the denial of his motion to reopen. Id. (emphasis added). We also noted, albeit in dictum, that "[e]ven if the retroactivity rationale of St. Cyr did apply to IMMACT-90, it would not apply to Alexandre because he did not plead guilty to his drug trafficking charges, but instead proceeded to trial and was convicted by a jury." Id.[23]

Alexandre is instructive. But it does not squarely resolve the issue presented in this petition. Alexandre involved a different statute that did not repeal all of § 212(c). And we stated quite clearly, "the retroactivity rationale of St. Cyr does not apply to IMMACT-90." Id. Admittedly, Alexandre did state that "§ 212(c) relief is not available to aliens who were convicted after a trial instead of on a guilty

---

[23]We further mentioned that "[e]ven without the five-year bar, the plain language of § 1003.44 also precludes those who did not plead guilty from relief." Alexandre, 452 F.3d at 1207.

plea." Id. However, our comments on the retroactivity issue and the scope of St. Cyr were classic dicta because we explicitly noted that the retroactivity issue was "not properly before us." Id.

As we noted earlier, the same retroactivity issue was presented in Brooks v. Ashcroft, 283 F.3d 1268, 1273-74 (11th Cir. 2002), but a jurisdictional bar, now removed by 8 U.S.C. § 1252(a)(2)(D), prevented us from resolving it.[24] 283 F.3d at 1271-73. Although Brooks does not control the discrete retroactivity issue now before us, it also sheds light on our interpretation of St. Cyr.

In Brooks, we addressed and rejected two constitutional challenges–under the Sixth Amendment and the Equal Protection Clause–to applying IIRIRA's repeal of § 212(c) to aliens, like Brooks, who were convicted before IIRIRA's effective date. First, Brooks argued that applying IIRIRA "would impermissibly penalize him for exercising his Sixth Amendment rights." Brooks argued that since St. Cyr authorized those who pled guilty to apply for § 212(c) relief, applying it to an alien convicted after a trial necessarily penalized him for exercising his Sixth Amendment right to trial. Id.

This Court rejected Brooks's Sixth Amendment challenge. Nothing in St.

_____

[24]As we explained in Part II. supra, the Real ID Act of 2005 subsequently conferred federal courts with jurisdiction to address pure legal issues in the removal context. See 8 U.S.C. § 1252(a)(2)(D). Therefore, Brooks has only been superseded as to its jurisdictional component, not its endorsement of the constitutionality of the St. Cyr framework. Brooks, 283 F.3d at 1272-73, superseded in part by 8 U.S.C. § 1252(a)(2)(D).

27

Cyr changed the fact that Brooks "was given the opportunity to be heard, the right to examine witnesses against him, the right to offer testimony, and the right to be represented by counsel." Id. We were "thus hard-pressed to see how his Sixth Amendment rights were violated." Id. We quoted St. Cyr for the proposition that alien defendants are "acutely aware of the immigration consequences of their convictions." Id. at 1274 (quoting St. Cyr, 533 U.S. at 322). We concluded that "Brooks weighed his options and was given a full trial, and was thus accorded his Sixth Amendment rights." Id.

This Court also rejected Brooks's Equal Protection challenge. Id. Brooks argued that "it violates the Equal Protection Clause to apply IIRIRA § 304(b) retroactively to aliens whose convictions preceded the enactment of IIRIRA, but yet preventing such retroactive application against aliens who pled guilty as in St. Cyr." Id. But we found that there was a rational basis for distinguishing between the two groups. Id. And we quoted approvingly St. Cyr's explanation of why plea agreements involve a quid pro quo, tit-for-tat exchange, between a criminal defendant and the government. Therefore, we concluded that Brooks's Equal Protection claim had "no merit." Id. Nonetheless, Brooks did not directly address whether IIRIRA's repeal of § 212(c) had an impermissible retroactive effect–the question that Ferguson raises here.

**D. Ferguson's Petition**

28

Ferguson argues that the BIA erred by limiting St. Cyr exclusively to guilty pleas and urges us to reject any reliance requirement for the purpose of determining whether IIRIRA's repeal of § 212(c) impermissibly applies retroactively to aliens like herself.[25]  Ferguson argues that because IIRIRA impermissibly attached new legal consequences and inflicted new legal disabilities on her past conviction, she is still eligible to apply for § 212(c) relief.  And she asks us to adopt an approach akin to the Third Circuit's.

The government, on the other hand, asks that we narrowly interpret the St. Cyr retroactivity shield as only applicable to aliens who pled guilty.  It points out that the Executive Office for Immigration Review has promulgated regulations consistent with this narrow interpretation of St. Cyr.[26]  The government contends that only those aliens who pled guilty can show reliance interests strong enough to warrant tempering the retroactive effects of IIRIRA's repeal of § 212(c).

We decline to adopt the approach urged by Ferguson.  In our view, reliance is a core component of St. Cyr's retroactivity analysis as it applies to aliens challenging the application of IIRIRA's repeal of § 212(c).  For starters, we do not

---

[25]We review the BIA's statutory interpretation de novo.  Sarmiento v. U.S. Att'y Gen., 381 F.3d 1277, 1279-80 (11th Cir. 2004).  We owe no deference when the issue involves the retroactive application of a statute.  Id. at 1280.

[26]Exec. Office for Immigration Review, Section 212(c) Relief for Aliens With Certain Criminal Convictions Before April 1, 1997, 69 Fed.Reg. 57,826 (Sept. 28, 2004) (codified at 8 C.F.R. pts. 1003, 1212, 1240 (2006)).

write on a blank slate. In Alexandre, we interpreted the "retroactivity rationale of St. Cyr" as inapplicable where the alien "did not plead guilty to his drug trafficking charge, but instead proceeded to trial and was convicted by a jury." 452 F.3d at 1207. Although this dictum is not binding, we recognize it as a persuasive reason to reject Ferguson's argument that reliance should not bear on a retroactivity analysis in this context.

Second, our reading of St. Cyr bolsters our conclusion. To take an alternate view would render the Supreme Court's reasoning and analytical approach— explained in St. Cyr—superfluous by half. Were Ferguson correct, the Supreme Court's discussion of reliance in St. Cyr was a wholly unnecessary and gratuitous academic exercise. And the notion that IIRIRA "plainly attached new legal consequences to [Ferguson's] conviction," Atkinson, 479 F.3d at 230, was so plain that it was lost on the Supreme Court. The fact that it is possible to advance a retroactivity claim in some circumstances without a showing of reliance does not give us carte blanche to discard the Supreme Court's pronouncements on the matter.

Even if reliance is not the only basis for determining whether a statute is impermissibly retroactive, see St. Cyr, 533 U.S. at 321 n.46, the retroactivity analysis is still "informed and guided by considerations of fair notice, reasonable reliance, and settled expectations," id. That is, just because an alien is not required

30

to demonstrate reliance does not mean that she may exclusively rely on other portions of the Supreme Court's retroactivity jurisprudence and pretend reliance is irrelevant.[27]

We recognize the Supreme Court has refused to adopt a rigid, single test for determining whether a statute has an impermissible retroactive effect. See St. Cyr, 533 U.S. at 321 n.46. However, it strikes us as more reasonable to focus on the reliance elements, as laid out in St. Cyr, than other elements of a retroactivity analysis, put forth in cases such as Landgraf. St. Cyr confronted the exact statutory provision at issue here—§ 212(c)—and laid out a sensible framework for deciding whether IIRIRA's repeal of § 212(c) relief has an impermissible retroactive effect. In our view, the St. Cyr approach is entitled to more weight than a decision

---

[27]In Fernandez-Vargas v. Gonzales, 548 U.S. 30, 33 (2006), the Supreme Court addressed whether INA § 241(a)(5) had an impermissible retroactive effect on aliens who "reentered the United States before IIRIRA's effective date." The Supreme Court held that St. Cyr's retroactivity rationale, which involved the quid pro quo nature of a guilty plea as it applied to eligibility for § 212(c) relief, did not address the concerns present when § 241(a)(5) applies. Id. at 44. "[Section 241(a)(5)] applies to stop an indefinitely continuing violation that the alien himself could end at any time by voluntarily leaving the country." Id. Unlike the impermissible effects that flow from the decision to rely on a guilty plea in the § 212(c) context, "[i]t is. . . the alien's choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, that subjects him to the new and less generous legal regime, not a past act that he is helpless to undo up to the moment the Government finds him out." Id.; id. at 44 n.10 ("Fernandez-Vargas's claim to such relief was contingent, and it was up to him to take some action that would elevate it above the level of hope. . . . Fernandez-Vargas never availed himself of them or took action that enhanced their significance to him in particular, as St. Cyr did in making his quid pro quo agreement."). Although Fernandez-Vargas does not control the discrete legal issue before us, we mention it because its reading of St. Cyr is consistent with our own. Here, Ferguson does not argue that she relied on some completed act that she is helpless to undo. A jury verdict is not an intentionally committed "past act" that Ferguson committed. It is a by-product of one's decision to engage in criminal conduct.

31

concerning the retroactivity analysis of a completely different statute. See

Landgraf, 511 U.S. at 250; see also Cohens v. Virginia, 19 U.S. 264 (1821) ("It is a

maxim not to be disregarded, that general expressions, in every opinion, are to be

taken in connection with the case in which those expressions are used.").

We therefore hold that reliance is a component of the retroactivity analysis

as it applies to aliens, deportable for criminal offenses, who wish to show that

IIRIRA's repeal of § 212(c) has an impermissible retroactive effect. Here,

Ferguson did not plead guilty but was convicted by a jury. And aside from her

decision to go to trial, she points to no other "transactions" or "considerations

already past" on which she relied. Joining the majority of circuits, we decline to

extend St. Cyr to aliens who were convicted after a trial because such aliens'

decisions to go to trial do not satisfy St. Cyr's reliance requirement. Therefore,

§ 212(c) relief is not available to such aliens.[28] See Hernandez-Castillo, 436 F.3d

at 520; Montenegro, 355 F.3d at 1037; Rankine, 319 F.3d at 102; Chambers, 307

F.3d at 290-93; Dias, 311 F.3d at 458; see also Saravia-Paguada, 488 F.3d at 1131;

---

[28]We express no opinion on whether aliens may prove an impermissible retroactive effect by demonstrating reliance on other "transactions" or "considerations already past" that do not involve a criminal conviction or the decision to go to trial. That issue is not before us in this particular appeal. Nor do we express a view on the availability of § 212(c) relief in circumstances where an alien (convicted after trial) makes an individualized showing of reliance on § 212(c) and affirmatively chooses to wait to file a § 212(c) application to build up a better record. See Restrepo, 369 F.3d at 634; Carranza-De Salinas, 477 F.3d at 208-210. Here, Ferguson has not claimed such reliance.

Armendariz-Montoya, 291 F.3d at 1121.  Accordingly, Ferguson's petition for

relief is **DENIED**.