[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11008
Non-Argument Calendar
_____

Agency No. A012-478-778


JUAN RAICEDO ACEBO-LEYVA,
a.k.a. Juan Acebo Leiva,

                                                          Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                          Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 20, 2013)

Before HULL, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Juan Raicedo Acebo-Leyva, a native of Cuba, seeks review of the Board of Immigration Appeals' (BIA) order dismissing his appeal of the Immigration Judge's (IJ) denial of his requests for a waiver of inadmissibility under former Immigration and Nationality Act (INA) § 212(c), 8 U.S.C. § 1182(c), and deferral of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).  After review of the record and consideration of the parties' briefs, we deny the petition in part and dismiss in part.

*Waiver of Inadmissibility*

The BIA concluded Acebo-Leyva was ineligible for a waiver of inadmissibility under former § 212(c) because his underlying aggravated felony convictions stemmed from a jury trial, rather than a guilty plea.  Acebo-Leyva argues he is eligible for a waiver of inadmissibility because a denial of his request based on the repeal of § 212(c) would have an impermissible retroactive effect.

Acebo-Leyva's argument is foreclosed by binding precedent.  In *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court held that the repeal of INA § 212(c)—which gave the Attorney General discretion to waive the deportation of a lawful permanent resident who had lived in the United States continuously for seven years—would result in an impermissible retroactive effect if applied to aliens whose convictions were obtained through plea agreements, and who would

2

have otherwise been eligible for such relief when they entered into their agreements. *St. Cyr*, 533 U.S. at 325-26. The Supreme Court emphasized that because St. Cyr, and other aliens like him, "almost certainly relied upon [the likelihood of receiving a waiver] in deciding whether to forgo their right to a trial," the elimination of such relief had an obvious and severe retroactive effect. *Id.* at 325. In *Ferguson v. U.S. Att'y Gen.*, 563 F.3d 1254, 1271 (11th Cir. 2009), we declined to extend the Supreme Court's decision in *St. Cyr* to aliens who were convicted by a jury following a trial. We explained the decision to go to trial did not satisfy the reliance requirement articulated by the Supreme Court in *St. Cyr*. *Id.*

*Ferguson* is dispositive of Acebo-Leyva's claim for a waiver of inadmissibility. Acebo-Leyva was convicted by a jury of his underlying drug offense following his decision to proceed to trial. Although Acebo-Leyva maintains *Ferguson* is incompatible with the Supreme Court's more recent decision in *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), he is mistaken. In *Vartelas*, the Supreme Court considered whether 8 U.S.C. § 1101(a)(13)—which was enacted in 1996 and precluded foreign travel by lawful permanent residents who had been convicted of a crime of moral turpitude—applied retroactively to a lawful permanent resident who sustained his conviction prior to the law's effective date. *See* 132 S. Ct. at 1483. In holding that the statutory provision did not apply

3

retroactively to Vartelas, the Court explained that the loss of the ability to travel abroad was a harsh penalty that indisputably ranked as a new disability to which Vartelas was not subject before the law's enactment. *Id.* at 1487-88.

Nothing in *Vartelas* undermines or calls into question the continuing validity of *St. Cyr*, and, by extension, *Ferguson*. *See Vartelas*, 132 S. Ct. at 1491-92 (relying on *St. Cyr*). *Vartelas* is another permutation of the Supreme Court's retroactivity case law. By relying on *Vartelas*, Acebo-Levya is attempting to "exclusively rely on other portions of the Supreme Court's retroactivity jurisprudence and pretend reliance is irrelevant." *Ferguson*, 563 F.3d at 1270. But this he may not do. As we explained in *Ferguson*, "[t]he fact that it is possible to advance a retroactivity claim in some circumstances without a showing of reliance does not give us carte blanche to discard the Supreme Court's pronouncements on the matter." *Id.* While "[w]e recognize the Supreme Court has refused to adopt a rigid, single test for determining whether a statute has an impermissible retroactive effect," we have already concluded it is "more reasonable to focus on the reliance elements, as laid out in *St. Cyr*, than other elements of a retroactivity analysis, put forth in [other Supreme Court cases]." *Id.* "*St. Cyr* confronted the exact statutory provision at issue here—§ 212(c)—and laid out a sensible framework for deciding whether [the] repeal of § 212(c) relief has an impermissible retroactive effect." *Id.* at 1270-71. Consequently, "the *St. Cyr* approach is entitled to more weight

4

than a decision concerning the retroactivity analysis of a completely different statute." *Id.* at 1271. As such, we adhere to our binding precedent, as we must, and deny Acebo-Leyva's petition to the extent it challenges the denial of his application for a waiver of inadmissibility.

*Deferral of Removal*

The BIA concluded Acebo-Leyva was not eligible for CAT relief because he failed to demonstrate it was more likely than not he would be tortured if returned to Cuba. Specifically, Acebo-Leyva did not establish that the Cuban government was aware of his political dissidence or participation in the Bay of Pigs invasion in 1961. Acebo-Leyva contends the BIA erred by focusing on the fact he was issued a safe conduct pass by the Cuban government in 1961, rather than analyzing whether the treatment of inmates in Cuban prisons amounts to torture. He maintains the BIA erroneously conflated the question of why he would be tortured with the torture itself.

Acebo-Leyva's arguments miss the mark. The BIA concluded Acebo-Leyva failed to show it was more likely than not he would be tortured if returned to Cuba because the Cuban government likely did not know about his past actions, and thus would have no reason to target him. This was a threshold factual determination that rendered further analysis unnecessary. If the Cuban government is unaware of Acebo-Leyva and his actions in 1961, it is unlikely that he will be imprisoned and

5

subjected to torture.  We lack jurisdiction to review these factual findings.  *See*

*Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1280 (11th Cir. 2009) ("[W]e may not

review the administrative fact findings of the IJ or the BIA as to the sufficiency of

the alien's evidence and the likelihood that the alien will be tortured if returned to

the country in question.").  Thus, to the extent Acebo-Leyva's arguments amount

to an assertion that he showed more likely than not he would be tortured if returned

to Cuba, his petition for review is dismissed.  *See id.* at 1281.

**PETITION DENIED IN PART AND DISMISSED IN PART.**